**UNITED STATES of America**

v.

**Benjamin ROCKOWER, Defendant.**

**Cr. No. 21856.**

United States District Court
E. D. New York.

Nov. 23, 1955.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., by Marie L. McCann, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for the United States.

Hancock Griffin, Jr., New York City, for defendant.

BYERS, District Judge.

This defendant filed on February 8, 1955, a petition for an order setting aside the judgment of conviction entered against him in this court on February 1, 1928, and for a hearing in that behalf.

The application is described as being for relief in the nature of a writ of error coram nobis, and has been so dealt with to avoid any technical confusion between that remedy and the office of Tit. 28 U.S.C. § 2255.

The petition was required by the undersigned to be supplemented by an affidavit containing, among other things, a statement admitting or denying in detail the correctness of the defendant's criminal record as set forth in Appendix I to the Government's opposing brief filed February 25, 1955.

Such an affidavit was filed June 24, 1955 and as to two of the offences so recited, denial is made; also one sentence is said to have been for two years instead of three. Otherwise the defendant's criminal record as a whole is now deemed to have been accurately stated.

The present application is to be distinguished in the legal sense, from the one discussed in U. S. v. Rockower, 2 Cir., 171 F.2d 423, wherein the denial of an earlier petition was affirmed. Certiorari was denied in 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738.

The instant petition asserts that the possibility of relief in the courts of the State of New York referred to in the opinion last referred to, has been dissipated by later decisions, and that relief by habeas corpus has proved unavailing for reasons stated by Judge Brennan in the District Court for the Northern District of New York. As a result, the pending application was sanctioned by Judge Swan, who induced the defendant's present attorney to act for him, as a public service. Mr. Griffin ably responded to that call to duty, and this court is indebted to him for his performance of a difficult task.

All procedural problems have been clarified by the latest decisions in U. S. v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 and 2 Cir., 222 F.2d 673. Accordingly a hearing was held in this court on October 13, 18 and November 10, 1955, these dates having been selected by defendant's counsel as convenient to him; the defendant and his counsel were present on these several days.

The purpose of the hearing was to bring to light all available testimony concerning the events of late January and early February 1928 involving the defendant's arrest, arraignment and plea of guilty.

Only in reference thereto was anything of substance developed, in addition to the facts discussed in the said opinion reported of our Court of Appeals, supra.

No one is forbidden to realize that the provision of the Sixth Amendment touching the right of a defendant in a criminal prosecution to have "the Assistance of Counsel for his defence" was intended to prevent injustice to an accused person; nor that the right can be waived. Johnson v. Zerbst, 304 U.S. 458, at page 465, 58 S.Ct. 1019, 82 L. Ed. 1461.

At the hearing, the defendant testified in his own behalf, and called Mr. Robert N. Gilmore as a witness. The Government called Mr. Chester L. Cain, retired Post Office Inspector, Mr. James Amadei, now an attorney and formerly assistant secretary of the Brooklyn Bar Association when Henry Rasquin was secretary; the latter gentleman, now deceased, was the United States Commissioner acting at the time of this defendant's arrest, and before whom he was brought for arraignment. Also Mr. Herbert W. Halls, now a U. S. Postal Inspector and in 1928 a confidential employee in the Post Office Inspection Office in Brooklyn. He testified that he was present when this defendant was brought before the Commissioner and remembers what took place; also that

he was present in court on February 1, 1928 when the defendant entered his plea of guilty to two counts, of a fourteen count indictment which charged seven dlifferent forgeries of money orders and seven different utterings and passings.

Also Mr. Wilson D. McKerrow, executive director of the Brooklyn Society for the Prevention of Cruelty to Children, and the custodian of its records. He brought those records, and testified in part to their showing, but since the matters so revealed had to do with earlier incidents of the defendant's career, they were of little moment in dealing with this petition.

The defendant's testimony showed that he was 28 years or thereabouts of age, on February 1, 1928, and briefly recited his family relationships, and boyhood. He was arrested in Syracuse on January 11, 1928, by the Syracuse police, at the request of the Postal authorities in Brooklyn. On the following day he was interviewed in the former city, by Post Office Inspectors William Plath (now deceased) and Chester L. Cain above mentioned.

While on the train he stated that in response to a suggestion by Plath that he plead guilty, he had said, " * * * Well, I may have to get a lawyer," thus revealing an awareness of the necessities which would soon confront him—a "rather complete legal sophistication". to quote from the opinion of our Court of Appeals in connection with his earlier petition.

It is unnecessary to recapitulate the testimony of the defendant given in open court, since it comes down to a denial that he was advised of his right to be advised by counsel, either before the Commissioner, or in open court on February 1, 1928, when he was called upon to plead to the indictment.

The Government witnesses Cain and Halls testified to the contrary as to the arraignment before the Commissioner; and Halls alone, as to the proceedings in court before Judge Moscowitz.

Mr. Gilmore testified that he had no recollection of having been assigned to advise the defendant on February 1, 1928; that he had no entry in his own records on the subject; that he would have had such a record if he had advised a plea of not guilty and urged a trial; that it is possible that he was assigned to advise this defendant on the day in question; that he accepted many such assignments at that time (as did other lawyers), being in court on other matters. That frequently, non-Volstead Act defendants (in 1928 and thereafter) were advised by lawyers appearing in those cases, at the request of the court.

On the conflicting testimony of the defendant on his own behalf, and of Cain and Halls called by the Government, the court now finds and states that the defendant was advised of his right to have counsel represent him, by Commissioner Rasquin; that when he appeared in court to plead to the indictment on or about February 1, 1928 the court appointed counsel to advise him; that counsel did so advise him, and the plea of guilty to counts 1 and 2 of the fourteen count indictment was not accepted by Judge Moscowitz until the defendant had consulted with such counsel, in the court room on that day.

The reasons for accepting the testimony of Cain are:

a. His presence in Syracuse, and conducting the defendant from that city to Brooklyn, on January 13, 1928, with P. O. Inspector Plath are not disputed by the defendant.

That puts Cain in a position to have participated in a conversation on the train such as he relates, touching the defendant's alleged necessity to use another money order in order to pay an attorney.

b. His presence when the defendant was brought before the Commissioner was an expectable element in completing the performance of the duties that took him to Syracuse.

c. His recital of what took place before the Commissioner is substantially

corroborated by Halls, and is more than plausible, it is convincing, in view of the seriousness of the offence charged.

d. He impressed me as a man who would not testify falsely; he had no purpose to serve by reciting the events as he recalled them, since he has been retired from his position as Postal Inspector for over five years.

The reasons for accepting Halls' testimony in preference to that of the defendant, are:

a. His statement that he was present at the arraignment on January 14, 1928 is corroborated by Cain, who is found to be a credible witness. Thus Halls was in a position to hear what then took place.

b. Halls was a confidential employee in the Post Office Inspection Office in Brooklyn in January and February of 1928.

This case was of such significance in the departmental sense, that there is no occasion to doubt that he remembers it; the total of the money orders stolen and negotiated by the defendant was $1,795.-00 according to Cain, as to which the defendant offered no testimony to the contrary. They were taken apparently from a sub-station, and Halls testified concerning a conversation with the defendant on January 14, 1928, as to the incidents involved, as follows:

"The Court: Did he say anything to you prior to that while he was in custody?

"The Witness (Halls): He admitted that he had cashed the money orders and that he had taken them. He said he was in the telephone booth at the station and when the man went in the back he went to the Post Office booth and he took everything but the Postmaster's signature stamp, because I asked him if the Postal money orders had the name, a stamped notation on it, and he said he didn't get the Postmaster's stamp, he got the entry and the money order stamp."

The defendant did not deny this testimony of Halls, which justifies the court's reliance upon the accuracy of the latter's memory, not only as to the conversation, but also concerning what took place in the court room on February 1, 1928, and the assignment of counsel to advise with the defendant after the latter had stated his intention to plead guilty.

■ Since the defendant had the advice of counsel, it is obvious that his rights under the Sixth Amendment were protected, even though his testimony be accepted that there was no mention of the Constitution made at the time. It was the right, not a reference to its source, that was of importance to this accused person. The case of Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, cited for the defendant has been examined and found to be fundamentally inapplicable in the factual sense.

The defendant's real grievance is against the fourth offender provisions of the laws of New York, not the administration of the federal statute for the violation of which he was successfully prosecuted in this court.

In view of all of the testimony which has been adduced, it is unnecessary to consider whether the fact that the plea was to but two counts of a fourteen count indictment, involving seven thefts of money order forms and seven passings of them when rendered into ostensible documents, would reasonably support a finding of waiver of the services of counsel, on the part of one whose previous encounters with criminal prosecutions was extended and varied.

■ As stated, the court finds that the defendant was accorded the assistance and advice of counsel before his guilty plea was accepted, and that he has failed to sustain the burden resting upon him. U. S. v. Morgan, supra, 346 U.S. at page 512, 74 S.Ct. 247, whereby his petition must be and hereby is denied.

Settle order.