**UNITED STATES of America, Plaintiff,**

v.

**Orie Floyd BAKER, Defendant. Crim. Nos. 15758, 15759 and 15765.**

United States District Court E. D. Arkansas, W. D.

Jan. 31, 1958.

Osro Cobb, U. S. Atty., and Milton D. Bowers, Asst. U. S. Atty., Little Rock, Ark., for plaintiff-respondent.

Orie Floyd Baker, defendant-petitioner, pro se.

LEMLEY, Chief Judge.

These cases are before the Court upon the verified petition of the defendant, Orie Floyd Baker, who is now confined in the Wisconsin State Penitentiary, to vacate the judgments and sentences of this Court rendered herein on June 14, 1955. The history of these proceedings is as follows:

In 1953, while petitioner was at large, two indictments were returned against him by a federal grand jury for the Southern District of Illinois charging him with uttering three postal money orders, the endorsements of the payees of which had been forged, and with theft of mail matter. Sometime in 1954 petitioner in Columbia County, Arkansas, forged a commercial check; he was ap-

prehended at Minden, Louisiana, was turned over to Arkansas authorities, and was sentenced to two years in the Arkansas State Penitentiary. While confined in that institution, he corresponded with the United States Attorney at Springfield, Illinois and with the United States Attorney at Little Rock, Arkansas, with the end in view of having the two Illinois cases transferred to the Western Division of the Eastern District of Arkansas, where the Arkansas State Penitentiary is located, for plea and sentence under Rule 20 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. That procedure being agreeable to the Government, the United States Attorney at Springfield prepared and mailed to the defendant two consents to transfer, which he executed, and also copies of the two indictments. In the meantime, a third indictment had been returned in the Southern District of Illinois charging him with the forgery of the payee's endorsement on a United States treasury check; petitioner was furnished with a copy of that indictment and with a consent to transfer the case, which consent he also signed, thus bringing all three of the Illinois cases before this Court for further proceedings under the Rule that has been mentioned.[1]

On June 13, 1955 petitioner was brought before the Court for arraignment, he being represented by appointed counsel, namely, Mr. John Dugan of the Little Rock Bar. Prior to his formal arraignment a colloquy took place between petitioner and his attorney, on the one hand, and the Assistant United States

Attorney in charge of the case, Mr. Milton D. Bowers, on the other hand, in which the steps leading up to the transfer of the cases were reviewed. Thereafter, the petitioner was formally arraigned, and pleaded guilty to all of the charges contained in the three indictments, in which pleas his attorney fully concurred.[2]

On the following day the petitioner appeared with his attorney for sentence, and in the course of the proceedings it developed that the offenses to which the former had pleaded guilty represented steps or transactions in a large scale criminal operation, extending through several states, in which petitioner, his wife, a brother, and another person had been involved. In that connection, Mr. James Lewis, an agent of the United States Secret Service, stated without contradiction in the presence of the defendant and his attorney, that according to the statement given to him by the petitioner he, his wife, brother, and the other person that has been mentioned started stealing Government checks and other mail in 1953, that their operations extended through Missouri, Iowa and Illinois and into Wisconsin, that petitioner had no idea of how many checks or how many pieces of mail had been stolen, but that probably between 100 and 200 checks were involved; that some of the parties would steal the checks and the others would forge the endorsements thereon, and vice versa.

It was further developed that petitioner had an extensive criminal record, dating back to 1938 or 1939,[3] that he was

1. The foregoing statements, and the factual ones that follow are our summation of the pertinent parts of the record before us, including the court reporter's transcript of his shorthand notes covering the proceedings incident to petitioner's arraignment and sentencing, which transcript has been filed with the clerk.

2. The indictment in No. 15,758 contained three counts, and the other two indictments consisted of one count each. In No. 15,759 petitioner's wife was named as a co-defendant, but she was never before this Court.

3. As to his record, Mr. Lewis stated that he had been convicted of chicken theft in 1938; that in 1939 he served a term in the Missouri State Penitentiary at Jefferson City for forgery, that he escaped from that institution and was re-captured; that in 1942 he received a five year sentence for forgery in Missouri; that he had been sentenced from one to ten years in Indiana and was on parole from the Indiana State Reformatory when he committed the offense in Arkansas which led to the sentence that he was then serving in the Arkansas State Penitentiary.

wanted by Indiana authorities as a parole violator, and that those authorities had lodged a detainer against him at the Arkansas penitentiary.

Petitioner's attorney made a strong statement in his client's behalf urging that the Court deal leniently with him. While he did not question his client's guilt, or his criminal record as outlined by Mr. Lewis, he argued that the offenses with which he stood charged were parts of one continuous transaction, all phases of which should be treated as a unit, that his wife and the other persons implicated with him had been apprehended and had already served their terms, that petitioner had served twenty months in the Arkansas penitentiary and that upon his release from there would have to go back to Indiana to finish his term in the Indiana State Reformatory. He also called the Court's attention to the fact that petitioner had served thirty-eight months in the army and had been honorably discharged.

In each of the three cases petitioner was sentenced to a term of five years, the sentences to run concurrently, and it was provided that each sentence should begin to run "at the expiration of the sentence said defendant is now serving in the Arkansas State Penitentiary." After imposition of sentence, petitioner was returned to the Arkansas penitentiary to complete the service of his sentence there, and the Government lodged a detainer against him which, as indicated, was junior in point of time to that already lodged by the State of Indiana.

On December 10, 1955 petitioner was released from the Arkansas penitentiary to the custody of Indiana officers and was returned to the Indiana State Reformatory, a federal detainer being subsequently lodged against him at that institution. Upon his release by the Indiana authorities, he was turned over to Wisconsin officers pursuant to a detainer from that State and, according to his petition, he was sentenced by the Municipal Court of Kenosha County, Wisconsin on January 14, 1957 to serve two concurrent terms of from one to three years for larceny and forgery, and he is now confined under those sentences; he states that his present conditional release date is March 19, 1959, more than a year hence, and that his maximum discharge date is January 15, 1960. Upon his confinement in the Wisconsin State Penitentiary the Government placed a detainer against him there, which is still outstanding. From the foregoing it will be seen that petitioner has never been in the physical custody of federal officials or confined in any federal institution since the sentences of this Court were imposed upon him.

In his original petition the defendant alleges that the Government is "holding sentence against me unconstitutionally"; that the alleged acts and conduct of federal authorities in refusing to take custody of him upon his release from the Arkansas penitentiary and again upon his release from the Indiana State Reformatory were illegal; that the Government has "refused to begin sentence" as directed by this Court; that the Government "has refused to grant parole application and the mandatory time, one third of given sentence, has expired"; that the treatment accorded him is "cruel and inhuman"; that the sentence imposed upon him was too severe; that he has been subjected to "excessive inhuman treatment"; that there were three other defendants "who were sentenced on the same charge as myself," that none of them received a sentence of more than eighteen months, and that on this basis the Court is accused of prejudice. He also alleges that "the Federal Government let the State of Arkansas bring me from the State of Louisiana into the State of Arkansas, without proper extradition hearing," and that at the time he "put in a complaint to the proper officials and it was not at all honored or recognized."

Before setting forth the remaining allegation of the original petition,

and without stopping now to go into the Government's response to the allegations already abstracted, we will state that if those allegations were all that the petition contained, that pleading would be subject to dismissal as failing to raise any substantial questions bearing upon the validity of our judgments and sentences. This is not a habeas corpus proceeding, and we are not concerned with the legality of petitioner's present confinement in Wisconsin, or with his previous confinements in Indiana and Arkansas, or with the manner in which he was brought into Arkansas from Louisiana where he was caught, and we have no jurisdiction with respect to parole. Moreover, even if it be assumed for purposes of argument that the failure of the Government to take physical custody of petitioner upon his release from the Arkansas penitentiary, and later upon his release from the Indiana State Reformatory, was in some way illegal,[4] still such legality would in nowise affect the validity of our judgments.

█ Petitioner's charges that the sentences imposed upon him were too severe, and that the Court was prejudiced against him are plainly without merit. Said sentences were within the law and, in our estimation, were abundantly justified by the defendant's conduct and by his extremely bad criminal record; moreover, as stated, the sentences were made to run concurrently rather than consecutively, which might have been done. It may be true that petitioner's wife and his other colleagues in crime received lighter sentences than he; but those sentences were not imposed by this Court, and, further, those persons may not have had the criminal record possessed by petitioner, or there may have been other extenuating circumstances. That the others involved with him received lighter sentences from other courts affords the petitioner no ground for complaint about the sentences that he received or any basis for charging that this Court was harboring prejudice against him.

The original petition, however, further alleges: "I wish to place a charge of cruel and inhuman treatment against the State of Arkansas and Government officials, for while serving there they forced me, through physical punishment, to sign a waiver to be tried in a different district than the one which I was indicted in." That allegation was denied by the Government in its response, and in that pleading it was correctly asserted that proceedings to transfer the cases from Illinois to Arkansas were initiated by the petitioner himself. On December 13, 1957 the Court addressed a letter to petitioner calling upon him to amplify the allegation above quoted by stating the nature of the "physical punishment" to which he claimed that he had been subjected, by identifying, if possible, the State and federal officers who allegedly inflicted such punishment, and, further, to state his position with regard to the Government's allegation that the transfer proceedings had been initiated by him. Thereafter petitioner filed an amendment to his petition, likewise verified, in which he stated: "The Gov-

---

4. The charge that the Government's failure to take physical custody of petitioner upon his release from the Arkansas penitentiary is patently without merit from a factual, as well as legal, standpoint, since as petitioner's own attorney stated in open court, the Indiana detainer was prior to the federal, and the Superintendent of the Arkansas institution simply honored the prior detainer as he had a right to do. The allegations in petitioner's amendment to his original petition that "the Government detainer was prior to any other detainer," and that "the Government had detainers on me before the State of Wisconsin or the State of Indiana even knew about my whereabouts," are palpably false. As far as his release to the Wisconsin authorities is concerned, the Government alleges in its response to the original petition that the Wisconsin detainer was lodged prior to its own; this is denied by petitioner in his amendment, but we deem the matter immaterial.

ernment's allegations that the transfers of the proceedings were initiated by me do not state or show that such initiations were brought about by 'physical punishment.' The 'bull hide' was used on several occasions to make me sign consents to transfer. Privilege of correspondence, in regard to my case was refused me at all times. The convict guard threatened me with my life if I did not comply with the wishes of the officers. I have the material proof to the above facts that can be used at the opportune time." Although the Government has filed no response to this amendment, we take it that it traverses the allegations that petitioner was beaten and threatened for the purpose of compelling him to sign consents to transfer.

■ Regardless of the truth of petitioner's allegations that he consented to the disposition of his cases in Arkansas as a result of force and threats, the fact remains that those allegations have been made and sworn to, and we think that it may be conceded that if they are true, then the consents in question would be ineffective and our judgments and sentences based thereon would be void and subject to collateral attack. It therefore becomes necessary for us to consider whether or not, in view of petitioner's present confinement in Wisconsin, we have jurisdiction to entertain his petition at this time, and, if so, whether or not that jurisdiction should be exercised and a hearing held to determine the truth of said allegations.

With regard to the question of jurisdiction, if the instant petition is viewed as a proceeding under 28 U.S.C.A. § 2255,[5] then we are without jurisdiction to grant him any relief because he is not "in custody under sentence of a court es-tablished by Act of Congress," and no order that we might enter would bring about his release from his present confinement. Booth v. United States, 9 Cir., 209 F.2d 183, certiorari denied 347 U.S. 923, 74 S.Ct. 525, 98 L.Ed. 1077; United States ex rel. Bogish v. Tees, 3 Cir., 211 F.2d 69, and cases there cited; Winhoven v. United States, 9 Cir., 209 F.2d 417; Duggins v. United States, 6 Cir., 240 F.2d 479; Wingo v. United States, 6 Cir., 244 F.2d 800.

The petitioner, however, does not refer to Section 2255 in his petition, and in United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248, it was decided, four justices dissenting, that the procedure made available by Section 2255 is not exclusive, and that in proper cases judgments of federal courts in criminal cases can be attacked collaterally through proceedings analogous to the ancient writ of error coram nobis. It was further held that such remedy is available to a prisoner in a State institution who had been sentenced years before by a federal court, and who had served such sentence in his entirety, but who on account thereof had been subjected to a heavier penalty for a later law violation by the State of New York under its habitual criminal statute. In reaching its decision the Court took the position that Section 2255 did not abolish the writ of error coram nobis, that a petition for such a writ was but a step in the original criminal case, and that Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. abolishing that writ was not applicable to criminal cases. It was still further held that indefiniteness on the part of a petitioner in characterizing the relief sought as a motion under Section 2255, on the one hand, or as a petition for

5. Insofar as is here pertinent that statute provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

coram nobis relief, on the other, did not justify the refusal of the latter type relief in a proper case. See also United States v. Rutkin, 3 Cir., 212 F.2d 641.

As to the nature and scope of coram nobis, it was pointed out that its function is to correct errors of fact not apparent on the face of the record, and that where by reason of such errors a judgment in a federal criminal case is subject to collateral attack, and no other remedy is available, a petition in the nature of "the extraordinary writ of *coram nobis*" must be heard by the federal trial court lest "a wrong * * * stand uncorrected which the available remedy would right." 346 U.S. at page 512, 74 S.Ct. at page 253.

It should be noted that in the Morgan case the petitioner had already served his federal sentence, and, apart from coram nobis, he had no remedy either present or potential to attack it, but on account of its existence he was being confined in a State institution under a heavier sentence than he would have otherwise received. The same situation was presented in United States ex rel. Bogish v. Tees, supra, 3 Cir., 211 F.2d 69; Gordon v. United States, 5 Cir., 216 F.2d 495; Farnsworth v. United States, 98 U.S. App.D.C. 59, 232 F.2d 59; United States ex rel. Baerchus v. Day, 3 Cir., 232 F.2d 627; United States v. Nickerson, D.C. Mass., 124 F.Supp. 35; United States v. Vargas, D.C.P.R., 124 F.Supp. 195; Haywood v. United States, D.C.N.Y., 127 F.Supp. 485; and United States v. Rockower, D.C.N.Y., 136 F.Supp. 225. And that situation, it appears to us, is the conventional one in which the Morgan doctrine is applicable, although that doctrine has been applied where the adverse effect of the prior federal conviction was potential rather than present. See United States v. Bradford, 2 Cir., 238 F.2d 395; Shelton v. United States, 5 Cir., 242 F.2d 101; United States v. Halley, 2 Cir., 240 F.2d 418. On the other hand, in United States v. Oddo, D.C.N.Y., 129 F.Supp. 564, where

there was no showing that the length of the State sentence being served by the petitioner had been affected by the federal sentence sought to be challenged, and where there was no real potentiality of the federal sentence adversely affecting petitioner in the future, it was held that his interest in the matter was so remote and speculative that his petition did not even present a "case or controversy" within the jurisdiction of the federal court.

Assuming that under the Morgan decision and the other cases heretofore cited we have jurisdiction to entertain this petition as one in the nature of a petition for a writ of error coram nobis, it by no means necessarily follows that such jurisdiction must be exercised and a hearing held at this time. The rule of the Morgan case is subject to a significant qualification, expressed in the following language: "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." 346 U.S. at page 511, 74 S.Ct. at page 252. We find no such compelling circumstances here, nor do we think that further proceedings herein at this time can be of any practical benefit to the defendant.

The petitioner's own petition discloses that he will be confined in the Wisconsin penitentiary for some time to come; he does not challenge the validity of his Wisconsin sentence, nor could he in the instant proceedings, nor does he suggest that a favorable ruling here would bring about his release from the institution where he is now confined. It does not appear that he has received any longer sentence in Wisconsin than he would have received but for our judgments and sentences, and, actually, in view of his criminal record, the sentences there imposed upon him appear to have been quite lenient. Nor does it appear that he is now facing any prosecu-

tion under any habitual criminal statute in which prosecution our judgments and sentences would have significance, and whether or not he will ever be confronted with such a prosecution on account of conduct of which he may be guilty after release from confinement depends upon himself. Moreover, even if we should hear his petition and set aside our judgments and sentences, the petitioner would still be subject to the stigma of his numerous prior convictions heretofore mentioned, and of his subsequent conviction in Wisconsin. Cf. United States v. Oddo, supra, D.C.N.Y. 129 F. Supp. 564.

In addition to those considerations it should be observed that in the Morgan case, and in the cases following it which have been cited, the persons involved had no remedy, either present or potential, other than coram nobis, to test their convictions. Here, however, as soon as the petitioner is released to federal custody, he can apply to this Court for relief by means of a Section 2255 motion, or if he takes the position that as of that time his federal sentences have expired, or that he is entitled to parole or conditional release, he can litigate his contentions by habeas corpus proceedings in the district in which the federal authorities may undertake to confine him.

Still further, it should be pointed out that if the petitioner should be granted a hearing and be successful in his petition, that would not necessarily be the end of the matter. He would still be subject to being carried to Illinois and re-arraigned on the same indictments, and should he plead guilty or be convicted—and nowhere in his pleadings does he allege that he is innocent of the offenses charged against him—he might receive more severe punishment than this Court imposed upon him. Hence, to grant his petition might actually work to his disadvantage.

In reaching our conclusion we do not overlook the fact that in Mitchell v. United States, 10 Cir., 228 F.2d 747, the trial court granted a hearing to a petitioner confined in a State penitentiary who had not begun to serve a consecutive federal sentence imposed upon him, and that the Court of Appeals did not question the propriety of such proceedings; there, however, it would seem that the trial court simply did not raise the question. Nor do we overlook that in Tucker v. United States, 9 Cir., 235 F.2d 238, it was held error for the trial court to refuse to grant a hearing on a petition attacking a subsequent consecutive sentence service of which had not been begun; but there again the question of prematureness was not discussed, and, furthermore, there both sentences had been imposed by federal courts, and the prisoner was confined in a federal institution. Whatever may be thought of the extent of the Morgan decision as applied to federal prisoners in federal institutions it seems to us that to grant hearings on petitions filed by persons confined in State penal institutions necessarily, to some extent at least, involves a disruption by representatives of another sovereignty of institutional discipline and routine, which is undesirable and should not be done except where there is some substantial present advantage to the petitioner in holding an immediate hearing, or where to refuse such hearing would leave him without any remedy, present or future, whereby he might obtain review of his federal conviction. Neither of those considerations is present here.

The Morgan case has already produced a vast amount of litigation in the federal courts, thus increasing the already heavy workload of the judges and United States attorneys, to say nothing of putting the Government to the trouble and expense of transporting prisoners to and from penal institutions, often for great distances, to testify in support of petitions, the vast majority of which are utterly without merit, and the hearings on which gain the petitioners nothing except a temporary change of scene and relief from monotony, with an occasional

opportunity for escape. We feel that that decision should be confined in its application to the situation there presented or to those more closely analogous thereto than the instant case presents. Let an order denying the petition be entered.