196 So.2d 1 (1967)
Roosevelt TOLAR, Appellant,
v.
STATE of Florida, Appellee.
No. 806.
District Court of Appeal of Florida. Fourth District.
March 7, 1967.
*2 Roosevelt Tolar in pro. per.
Earl Faircloth, Atty. Gen., Tallahassee, and James T. Carlisle, Asst. Atty. Gen., Vero Beach, for appellee.
BARNS, PAUL D., Associate Judge.
This is an appeal from a final judgment denying appellant's post-conviction motion to set aside judgments and sentences of life imprisonment on three informations charging robbery and conspiracy to rob. We find error and reverse.
State v. Tolar, Case No. 97405. In this case the record shows that the jury found the defendant guilty as charged in "both counts". The first count of the information charged that the defendant conspired with others, who were not defendants, "to commit the felony of robbery in the following manner: by robbing, stealing, and taking away from the person and custody of Ernest Parham by force, violence, assault and by putting in fear lawful currency of the United States of America on June 2, 1964. * * *"
The second count of the information charged that the defendant, Roosevelt Tolar and Johnnie Williams, Jr., on June 2, 1964, "did then and there unlawfully and feloniously rob, steal, and take away from the person and custody of Ernest Parham by force, violence, and assault, and putting in fear" $702.19.
*3 The jury found Tolar guilty of both counts, and upon being adjudged guilty of "conspiracy" and "robbery" "as charged in the first and second counts", a life sentence was imposed.
Section 833.04, F.S.A. (Laws 1957, c. 57-383, § 2), limits punishment for conspiracy to commit a felony not punishable by "death or imprisonment for life" (c. 57-383, Laws 1957) to not "more than one-fourth of the penalty or term which could have been imposed if the felony conspired to be committed had actually been committed * * *." However, § 813.011, F.S.A., prescribes that one convicted of robbery of "money or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any lesser term of years * * *."
Since the court imposed a sentence of life imprisonment for robbery, the penalty for conspiracy is not material at this time.
State v. Tolar, Case No. 97425. In this case the information contained four counts against the defendant, but the jury's verdict only found the defendant guilty of "All Count 3" which count charged robbery of $337.33 from one Walker on May 21, 1964. The court adjudged the defendant guilty of "conspiracy; robbery; aggravated assault" as charged in the "first, third and fourth counts" and sentenced the defendant to imprisonment "during the term of your natural life" on September 21, 1964.
The record does not support the adjudication of guilt and sentence on the first count charging conspiracy and on the fourth count charging an aggravated assault, and such action seems erroneous since the verdict of guilty was only on count three.
State v. Tolar, Case No. 97472. In this case, the defendant entered a plea of guilty to count three of the information charging robbery on June 23, 1964, of one Maroon of $60.90 by the defendant, Tolar, and two others, named Rhoden and Maize. On October 19, 1964, the court adjudged the defendant guilty of robbery as charged in count three and sentenced him to life imprisonment, said term to run concurrently with the "sentence in Case Number 97425."
At all the foregoing proceedings the defendant had the Public Defender as his counsel, but on this appeal taken by the defendant, pro se, the Public Defender was dismissed as his counsel at the defendant's request and he has not since been represented by counsel.
Post-conviction motions for relief collaterally attacking judgments and sentences under Criminal Procedure Rule No. 1 are basically in the nature of writs of error coram nobis. The federal counterpart to Criminal Procedure Rule No. 1 is § 2255 of Title 28, U.S.C.A., from which Rule 1 was modeled. Austin v. State, Fla. App. 1964, 160 So.2d 730. As stated by the late Honorable John J. Parker concerning § 2255: "This motion is in the nature of an application for a writ of error coram nobis and is merely declaratory of existing law [cases cited]." 8 F.R.D. 171, 175. The Reviser's Note to § 2255, supra, states:
"This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus. * * *"
Annotation references: 96 L.Ed. 244; 20 A.L.R.2d 976. Compare 24 C.J.S. Criminal Law § 1606; 18 Am.Jur.2d, Coram Nobis, Etc. As held by State v. Weeks, Fla. 1964, 166 So.2d 892 (per Justice Thornal), motions for relief under Rule 1, like habeas corpus, are not steps in the criminal prosecution, but are in the nature of independent collateral, civil actions, based on criminal actions; and appeals from the final judgments under Rule 1 motions are governed by practice of appeals in civil actions; thus, the government, as well as the defendant, may appeal. Although Rule 1 motions are civil in nature, when filed in courts vested only with jurisdiction in *4 criminal cases, such courts' jurisdiction of such motions becomes ancillary and subordinate to principal criminal cases; hence, it has ancillary civil jurisdiction in such instances. Furthermore, Rule 1.38 (now Rule 1.540) Rules of Civil Procedure abolished the use of "writs" of coram nobis and audita querela but not the substance of the remedy under the classical "writs" now available by motion. 7 Moore's Federal Practice, 2nd Ed., §§ 60.13 and 60.14. The effect of the rule is to substitute the motion for the writ. Blackstone made no mention of coram nobis due to the then use of the "motion" to obtain its substances. Moore's Federal Practice, supra, § 60.14, citing Pickett's Heirs v. Legerwood, 1833, 7 Pet. 144, 147, 148, 8 L.Ed. 638. Rule 1, like § 2255, is not all comprehensive or exclusive of relief otherwise available by motion under the classical writs or under Rule 1.38 (now Rule 1.540) Rules of Civil Procedure. United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248. Like in habeas corpus and in certiorari, the "writ" is no longer used, but the remedy remains available.
Since § 2255 and Rule 1 were both for the purpose of meeting the same kind of practical problems encountered in habeas corpus proceedings, and since Rule 1 is almost literally the same as § 2255, a reading of United States, v. Hayman, 1952, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, is necessary for an understanding of the history, purpose and construction of both. Their principal objective is to provide a hearing where the records and witnesses and others with knowledge of the case were more likely to be.
Defendant's grounds for relief are that:
(1) The court lacked jurisdiction to accept his plea of guilty because he is "an illiterate, moronic mental defected person that lack[s] ability of comprehension beyond that of an eight (8) year old child."
(2) The defendant was deprived of effective assistance of counsel because his court-appointed counsel advised defendant that he thought defendant was guilty (before others) and advised defendant to plead guilty and "refused to free movant's defense witnesses from intimidation by county solicitor's stratagem of charging defense witnesses with perjury  to subsequent[ly] drop such charges once purpose had been served."
(3) The defendant was deprived of a fair and impartial jury because of "the new[s] media's broadcastings and publications appearing prior to the trial of movant generated an atmosphere of hysteria and prejudice to movant, which was instigated by the police and prosecuting officials, inso much as [County Solicitor] Mr. James Russ release[d] statements to new[s] media that movant was a member of a so-called `Nasty Bonzo Gang'. Judge Cooper's term of movant being a `Mad Dog' so received wide coverage. Thoroughly prejudicing the mind of the prospective juror[s] * * * against him."
(4) The defendant was deprived of a fair trial and his right to "have compulsory process for obtaining witnesses in his favor" by "charging movant's common-law wife, Mrs. Joyce Tolar, with perjury; threatening to send her to prison if movant refuse[d] to cooperate; [and] succeeding in suppressing Mrs. Tolar's testimony, frightening other witness[es], and coercing movant to co-operate  Mr. Russ dismissed charges of perjury following movant's convictions."
(5) The defendant was deprived of a fair trial by the admission into evidence of perjured testimony which "were the fruit of a bargain Solicitor Russ made with Morris Lee Davis and Gerald Brown, Co-defendants, and such was Perjurisus [sic] with knowledge of prosecutor and police officers; subsequently, Gerald Brown has admitted before this court that statements and testimonies give[n] by himself and Morris Lee Davis were mostly false, induced by Solicitor Russ' promises of freedom from prosecution."
*5 (6) The defendant "was deprived an organic constitutional right by appointed-counsel Joseph K. Dumond and County Solicitor James Russ, whom through mental coercion and durass [sic] compelled the movant to enter a plea of guilty upon two-counts of robbery, in so much as, movants common-law wife testified that she and movant were at the movies on the night that `Acme Cleaners' and `Underhills 7-11' robberies took place. Whence, Mr. Russ charged her with perjury and advised movand that Mrs. Joyce William Tolar, his wife, would get 20-years for perjury; but if movant co-operated with the State, that charges against Mrs. Tolar would be dismissed. Whereupon Mr. Dumond advised movant that there was nothing else movant could do except submit. Therefore, movant being an illiterate, moronic eighteen year (18) old youth without sound mind, movant pleaded guilty to crimes which he knew nothing of, solely to save his wife from prosecution.
"In furtherance to the facts of this cause, movant is still illiterate, cannot read nor write, nor knows or understand why he is actually confined in Florida State Prison, or what the charges were against him at trial, who made the charges, at what time, or who the judge were that tried him. Movant has a I.Q. of approximately 45 or 50 to say the most. Prone to suggestions, timid, and lacks the capacity to reason and understand almost entirely."
As stated in 8 Moore's Federal Practice, § 11.04, note 1, the sole purpose of the statute (§ 2255) was to provide the same relief available by habeas corpus in a more convenient forum, i.e., the court where the defendant is sentenced rather than the district of his confinement. United States v. Hayman, 1952, 342 U.S. 205, 219, 72 S.Ct. 263, 272, 96 L.Ed. 232. Sanders v. United States, 1963, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148. Motions under § 2255 need not demonstrate the innocence of the movant since inquiry under § 2255 (or Rule 1) is directed to constitutional rights and guilt or innocence should be immaterial. Heideman v. United States, 8 C.A., 1960, 281 F.2d 805, 808; Watts v. United States, 1960, 107 U.S.App.D.C. 367, 278 F.2d 247, 251.
The principal ground of a Rule 1 motion challenging a guilty plea is the denial of the constitutional guaranty of due process in the circumstances surrounding the plea, when not clearly reviewable on appeal. A Rule 1 motion is not a substitute for an appeal. The scope of review on appeal is much broader. Since § 2255 served as the prototype for Rule 1, both fall in the category of coram nobis, and the only time limitation may be laches, since laches was the only time limitation at common law for seeking the common law writ. 7 Moore's Federal Practice, 2d Ed., § 60.14 (p. 52). For the principles of the remedy under the common law writ of coram nobis, see 7 Moore's Federal Practice, 2d Ed., §§ 60.13 and 60.14.
The federal courts have freely recognized that § 2255 in nowise impaired the application of common law principles of coram nobis in cases labeled as under § 2255, but beyond its scope, when appropriate. Thomas v. United States, 1959, 106 U.S. App.D.C. 234, 271 F.2d 500, 503, clearly states principles which are as applicable to our courts, viz.:
"We should here apply the Morgan case. Cf. Pollard v. United States, 1957, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393. The relief sought and the grounds therefor are both cognizable within the scope of the common law writ of error coram nobis. It had often been held prior to United States v. Morgan that the writ would lie to review convictions which are allegedly based on coerced pleas of guilty. See 30 A.L.R. 686 and cases collected there. The Morgan case itself specifically noted, as an example of the proper use of the writ, a conviction on a guilty plea obtained through the coercion of fear of mob violence, citing Sanders v. State, 1882, 85 Ind. 318. 346 U.S. at page 508, 74 S.Ct. at page 250. Recently, the Morgan *6 case has been followed by this and other federal courts in cases where the petitioner alleged his plea of guilty was involuntary. Farnsworth v. United States, 1956, 98 U.S.App.D.C. 59, 232 F.2d 59, 62 A.L.R.2d 423; Shelton v. United States, 5 Cir., 242 F.2d 101, reversed on other grounds on rehearing en banc, 5 Cir., 1957, 246 F.2d 571, reversed on confession of error by Solicitor General, 1958, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579.
"Two things only serve to distinguish the instant case from United States v. Morgan: (1) there petitioner was attacking a sentence already served; here he is attacking a sentence he has not yet begun to serve; (2) there his papers were labeled as an application for a writ of coram nobis; here the papers are labeled `Motion to Set Aside Judgments of Conviction and to Withdraw Guilty Pleas'; the motion recited that the District Court had jurisdiction by virtue of Section 2255 and Rules 32(d) and 45(c), Fed.R.Crim.P. The labels are, of course, not controlling in either case.
"The first point is a distinction without a difference. Other circuits have applied the doctrine of the Morgan case to attacks on sentences which the petitioner has not yet begun to serve. In Matter of Dinerstein, 9 Cir., 1958, 258 F.2d 609; Tucker v. United States, 9 Cir., 1956, 235 F.2d 238; Mitchell v. United States, 10 Cir., 1955, 228 F.2d 747. But see United States v. Baker, D.C.E.D.Ark. 1958, 158 F. Supp. 842. See also Madigan v. Wells, 9 Cir., 1955, 224 F.2d 577, 578 note 2.
"As to the labeling point, the Supreme Court said in the Morgan case: `In behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief.' 346 U.S. at page 505, 74 S.Ct. at page 249. See Darr v. Burford, 1950, 339 U.S. 200, 203-204, 70 S.Ct. 587, 94 L.Ed. 761. Here the sofar uncontradicted allegations of petitioner make `plain a right to relief' if appellant can show them to be true. The government must, of course, be given an opportunity to rebut those allegations, and `it is presumed the proceedings were correct and the burden rests on the accused to show otherwise.' United States v. Morgan, 346 U.S. at page 512, 74 S.Ct. at page 253, 98 L.Ed. 248. Other cases in which motions not labeled as applications for writs of error coram nobis have been treated as such include Jones v. United States, 1958, 103 U.S.App.D.C. 326, 258 F.2d 420; Shelton v. United States, supra; In Matter of Dinerstein, supra, (denied as insufficient); United States ex rel. Bogish v. Tees, 3 Cir., 1954, 211 F.2d 69. See also Urrutia v. United States, 5 Cir., 253 F.2d 501, denial of hearing reversed on confession of error, 1958, 357 U.S. 577, 78 S.Ct. 1389, 2 L.Ed 2d 1548; Brinkley v. State of Texas, 5 Cir., 1956, 239 F.2d 166 (petition must be filed in sentencing court); Lopez v. United States, 9 Cir., 1954, 217 F.2d 526. But see Funkhouser v. United States, 4 Cir., 1958, 260 F.2d 86, certiorari denied, 1959, 358 U.S. 940, 79 S.Ct. 346, 3 L.Ed.2d 348 (where the court said there were no `special circumstances' present as in the Morgan case).
"The net of the situation is that while Congress, in Section 2255, was affording a new remedy for post conviction attacks on a federal sentence, no congressional purpose can be divined to exclude ancient remedies where the new one does not reach the particular problem."
Motions seeking relief from confinement under Rule 1 must specifically allege facts which, if true, would entitle defendant to a vacation of his sentence; conclusory allegations are insufficient. Simmons v. United States, D.C.W.D.Ark. 1964, 227 F. Supp. 778, 785 (mental incompetency).
As stated by 8 Moore's Federal Practice, 2d Ed., § 11.04 relating to post-conviction relief motions under § 2255, the "petition [motion] seeking relief must specifically *7 allege facts which, if true, would entitle the defendant to vacate his sentence; conclusory allegations are insufficient", citing Simmons v. United States, supra.
The lower court did not hold an evidentiary hearing on the motion before denying it. The motion states six (6) grounds for relief under the three convictions and fails to state which grounds are directed to which adjudication. The first three grounds seem insufficient; however, taking grounds (4), (5) and (6) as true, it does not appear that the defendant is entitled to "no relief". As stated in Machibroda v. United States, 1962, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473:
"* * * A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void. A conviction based upon such a plea is open to collateral attack. See Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Shelton v. United States, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579, reversing, 5 Cir., 246 F.2d 571. `A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009."
The judgment of dismissal is reversed and the case remanded with directions to grant the movant an evidentiary hearing with defendant present and thereafter to make findings of fact as prescribed by Rule No. 1. It would appear that the lower court would be greatly helped should an attorney be appointed by it to aid the defendant.
Reversed.
CROSS, J., concurs specially with opinion.
CROSS, Judge (concurring specially).
I concur specially in the opinion of Justice Barns on the authority of Nolan v. State, Fla.App. 1966, 192 So.2d 500. This is a case from this district and clearly sets forth the position of this court in matters under similar circumstances.
ANDREWS, J., concurs specially in the opinion of CROSS, J.
BARNS, PAUL D., Associate Judge, concurs.