721 A.2d 259

**Pasquale Joseph SKOK**

v.

**STATE of Maryland.**

**No. 528, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Dec. 7, 1998.

Peter A. Prevas (Konstantine J. Prevas and Prevas & Prevas, on brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gwynn X. Kinsey, Jr., Asst. Atty. Gen., Baltimore, and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on brief), for appellee.

Argued before SALMON, EYLER and KENNEY, JJ.

SALMON, Judge.

The appellant, Pasquale Skok, on February 18, 1994, pled guilty in the Circuit Court for Prince George's County to possession of Cocaine (Case No. 1). He was sentenced to two years imprisonment with all but three days of the sentence suspended in favor of two years probation. Because he had already served three days in jail, he was released immediately after sentencing. In taking the plea, the trial judge did not comply with the dictates of Maryland Rule 4–242(c) because she did not explain to appellant on the record the consequences of the plea. *See State v. Thornton*, 73 Md. App. 247, 253–54, 533 A.2d 951 (1987).[1]

Later in 1994, on October 17th, appellant entered a plea of *nolo contendere*, in the Circuit Court for Prince George's County to another charge of possession of cocaine (Case No. 2). His sentence for the second offense was even more lenient than in Case No. 1. He was sentenced to one day incarceration, with credit for the one day he had already spent in jail. Court costs were waived. In violation of Maryland Rule 4–242(d),[2] neither the trial judge, the prosecutor, nor the de-

---

**1.** Appellant, in Case No. 1, also contended that the court failed to:

    1. Have the facts supporting the guilty plea read in open court in the presence of the [d]efendant and have the [d]efendant acknowledge on the record that he understood the recited facts;

    2. The court never found on the record that there was a factual basis for the guilty plea;

*   *   *

    4. The court improperly advised the [d]efendant of his right to jury trial in that the court indicates that in a jury trial both the [j]udge and the jury would determine guilt or innocence.

It is unnecessary to decide whether appellant is correct as to these additional contentions.

**2.** Md. Rule 4–242(d) reads:

    *Plea of nolo contendere.*—A defendant may plead nolo contendere only with the consent of court. The court may require the defendant or counsel to provide information it deems necessary to enable it to determine whether or not it will consent. The court may accept the plea only after it determines, upon an examination of the defendant ·on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the defendant is pleading voluntarily with understanding of the

fense attorney made any on-the-record examination of the defendant to determine if he was entering the plea voluntarily with an understanding of the nature of the charges and the consequences of the plea.

In both Cases Nos. 1 and 2 appellant was represented by counsel. Despite the facts that the plea in Case No. 1 had not been taken in compliance with Maryland Rule 4–242(c) and in Case No. 2 there was a failure to comply with Rule 4–242(d), neither counsel moved to withdraw the pleas pursuant to Maryland Rule 4–242(f).[3] Likewise, neither counsel filed a motion for leave to appeal in either Case Nos. 1 or 2. *Compare* Md. Rule 8–204.[4]

---

nature of the charge and the consequences of the plea. Following the acceptance of a plea of nolo contendere, the court shall proceed to disposition as on a plea of guilty, but without finding a verdict of guilty. If the court refuses to accept a plea of nolo contendere, it shall call upon the defendant to plead anew.

**3.** Md. Rule 4–242(f) provides:

*Withdrawal of plea.*—At any time before sentencing, the court may permit a defendant to withdraw a plea of guilty or nolo contendere when the withdrawal serves the interest of justice. After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty or nolo contendere if the defendant establishes that the provisions of section (c) or (d) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4–243. The court shall hold a hearing on any timely motion to withdraw a plea of guilty or nolo contendere.

**4.** Md. Rule 8–204 provides, in pertinent part:

**Application for leave to appeal to Court of Special Appeals.**

(a) *Scope.*—This Rule applies to applications for leave to appeal to the Court of Special Appeals.

(b) *Application.*—(1) How made; time for filing. An application for leave to appeal to the Court of Special Appeals shall be filed in duplicate with the clerk of the lower court. The application shall be filed within 30 days after entry of the judgment or order from which the appeal is sought, except that an application for leave to appeal with regard to bail pursuant to Code, Courts Article, § 3–707 shall be filed within ten days after entry of the order from which the appeal is sought.

(2) Content.—The application shall contain a concise statement of the reasons why the judgment should be reversed or modified and shall specify the errors allegedly committed by the lower court.

On June 1, 1995, the United States Immigration and Naturalization Service initiated deportation proceedings against appellant, who is a native of Italy. The basis for the deportation was appellant's plea of *nolo contendere* in Case No. 2 and his conviction in Case No. 1.

More than two and one-half years after the commencement of the deportation proceedings, appellant filed, in both Case Nos. 1 and 2, a petition for a writ of *coram nobis*, a motion for new trial, and a petition for a writ of *Audita Querela*.[5] Both

---

(3) Service.—If the applicant is the State of Maryland, it shall serve a copy of the application on the adverse party in compliance with Rule 1–321. Any other applicant shall serve a copy of the application on the Attorney General in compliance with Rule 1–321. If the applicant is not represented by an attorney, the clerk of the ·lower court shall promptly mail a copy of the application to the Attorney General.

\* \* \*

5. According to appellant's petition for a writ of *Audita Querela:*

The ancient common law Writ of Audita Querela exists on Maryland Common Law. *Job v. Walker,* 3 Md. 129 (1852); *see also Docura v. Henry,* 4 Har. & McH. 480 (1718); *Huston v. Ditto,* 20 Md. 305 (1863); *Seevers v. Clement,* 28 Md. 426 (1868); *Starr v. Heckart,* 32 Md. 267 (1870). The Writ was most widely used at common law by a defendant in a civil case to obtain relief against the consequences of a judgment based on facts arising after entry of the judgment (e.g., satisfaction of the judgment or discharge in insolvency proceedings). In *Job v. Walker, supra,* the Court of Appeals noted in 1852 that although the Writ of Audita Querela had fallen into disuse it is still available. The Writ of Audita Querela has been revised in recent years in the criminal context as a mechanism to obtain relief from the consequences of a judgment of conviction which were unknown at the time of the entry of conviction. *United States v. Salgado,* 692 F.Supp. 1265 (E.D.Wash.1988); *United States v. Ghebreziabher,* 701 F.Supp. 115 (E.D.La.1988); *United States v. Kimberlin,* 675 F.2d 866 (7th Cir.1982); see also, Annotation, *availability and appropriateness of Audita Querela relief in connection with immigration and naturalization proceedings,* 104 ALR Fed. 880. These recent cases demonstrate that use of this extraordinary Writ is available to vacate a criminal conviction where the equities of the case compel such a result. In *Salgado,* the [d]efendant was convicted in 1964 after pleading guilty to a charge of failing to pay transfer tax on a small amount of marijuana. *Salgado,* a[M]exican national, first entered the United States lawfully in 1943 and in 1947 married a United States citizen. After his criminal conviction he was advised several times by the INS that his green card was valid. In 1984 *Salgado* applied for Social Security benefits and it was determined that he had been

the petitions and the motions for new trial were based on the fact that the trial judges had failed to comply with Maryland Rule 4–242 when accepting appellant's pleas.

Circuit Court Judge Darlene Perry, in Case Nos. 1 and 2, denied both petitions and the motions for new trial. Appellant noted this appeal and raises two questions:

I.  Did the circuit court err in denying appellant's petition for writ of error coram nobis regarding the February 18, 1994 conviction and the October 17, 1994 nolo contendere plea?

II. Did the circuit court err in denying appellant's motion for new trial under Maryland Rule 4–331(b) based upon "mistake" or "irregularity" in the proceeding leading up to the February 18, 1994 conviction or in the October 17, 1994 acceptance of the nolo contendere plea?

## A.  ISSUE I—*WRIT OF ERROR CORAM NOBIS*

Appellant contends that Judge Perry erred in denying the petitions for writ of *coram nobis*. Before deciding the merits of this argument, we must first address the State's argument that this Court has no jurisdiction to decide whether the writs should have been granted because no statute grants appellant the right to appeal the denial of a writ of *coram nobis*. In support of its argument that this Court lacks jurisdiction, the

---

deported and was unlawfully in the United States. Due to his long presence in the United States *Salgado* was entitled to new relief under the Immigration Reform and Control Act under the "amnesty" or "legalization" program, new benefits that did not exist at the time of his conviction. But for the 1964 conviction, *Salgado* was entitled to permanent resident status under the legalization program. The Court, after concluding that other forms of post conviction type relief did not apply in that there was nothing apparently wrong with the guilty plea, acknowledged the availability of the Writ of Audita Querela and granted relief based upon the strong equities of the case and the new circumstances that arose since the date of conviction. In this appeal, appellant does not contest the court's denial of the writ of *Audita Querela*.

State relies on *Ruby v. State,* 121 Md.App. 168, 708 A.2d 1080, *cert. granted,* 351 Md. 7, 715 A.2d 965 (1998).

In *Ruby,* the defendant in a criminal case filed a motion for new trial, which was denied, but Ruby's trial counsel did not learn of the denial until ten weeks later. *See id.* at 172, 708 A.2d 1080. Defense counsel then filed a writ of *coram nobis* for the sole purpose of allowing a belated appeal. *See id.* The trial court granted the writ. *See id.* We recognized that an appellate court would have no jurisdiction to hear Ruby's belated appeal unless the writ of *coram nobis* had been properly granted. *See id.* at 173–74, 708 A.2d 1080. For reasons discussed thoroughly below, the *Ruby* Court held that the writ was improperly granted and thus dismissed the appeal as untimely. Unlike *Ruby,* in the case at hand, the appeal from the action of the trial court was timely.

In *Jones v. State,* 114 Md.App. 471, 691 A.2d 229, *cert. denied,* 346 Md. 27, 694 A.2d 950, *cert. denied,* —— U.S. ——, 118 S.Ct. 304, 139 L.Ed.2d 234 (1997), the defendant, Jones, pleaded guilty in 1975 to the crime of assault with intent to murder and was sentenced to five years imprisonment. *See id.* Seventeen years later he filed a writ of error *coram nobis* based on the (alleged) fact that his guilty plea was taken when he was under the influence of heroin. *See id.* at 473, 691 A.2d 229. The trial judge denied the writ in March of 1994. *See id.* at 474, 691 A.2d 229. Jones instructed his attorney to file an immediate appeal, but either the attorney failed to file the appeal or, if an appeal was filed, it was not properly recorded by the clerks. *See id.* In January 1996, the trial court granted Jones the right to file a belated appeal. *See id.* In *Jones,* the principle issue, however, was whether an appeal could be taken from a denial of a writ of *coram nobis.* In *Jones,* Judge Getty for this Court said:

> The question remains whether the right of appeal in coram nobis actions survived the adoption of Art. 27, § 645A(e), as amended in 1965. We hold that it does.
>
> As we have stated herein, the Post Conviction Procedure Act was intended to replace habeas corpus and coram nobis

as a statutory remedy for collateral challenges to criminal judgments. For the majority of cases it has succeeded. In those cases where the Post Conviction Act does not provide a remedy, however, the enactment of the new statute provided no reason for restricting appeals in habeas corpus cases. *Gluckstern [v. Sutton]*, 319 Md. [634] at 662 [574 A.2d 898 (1990)]. The same reasoning should be applied to coram nobis. The writ of error coram nobis remains available, therefore, as a remedy to mount a collateral attack upon a prior conviction or sentence. We see no justifiable reason for denying a right of appeal in a coram nobis petition when the right of appeal is available to those seeking redress under habeas corpus. The right of further review ought not depend upon the name of the vehicle bringing one to the tribunal. The paucity of coram nobis petitions, moreover, will not unduly burden the appellate courts.

We perceive no error in the chancellor granting a belated appeal from his Order denying appellant coram nobis relief. *See Dowd v. United States ex rel. Cook*, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215 (1951), where the Supreme Court said that a judge "has power in a habeas corpus proceeding to dispose of the matter as law and justice require." *Accord: Beard v. Warden*, 211 Md. 658, 661, 128 A.2d 426 (1957), stating that a circuit court in a habeas corpus proceeding could order that a prisoner be granted a belated appeal from his original criminal conviction.

*Id.* at 478–79, 691 A.2d 229.

■ In the case *sub judice*, the Post Conviction Relief Act (the Act) is not available to appellant because the Act does not provide a remedy for persons whose sentences have been served and who are no longer on parole or probation. *See* Md. Ann.Code art. 27, § 645A(a). Therefore, appellant needed to seek relief outside the Act. To the extent that *coram nobis* relief may be available in certain instances, appellant has the right to appeal the denial of his request that the court issue a writ of *coram nobis*.

■ As to the merits of the petitions for a writ of *coram nobis*, neither of appellant's petitions was based on facts not known to the trial judge when the plea was accepted. Both were based on careless procedural errors committed by the trial judge, not upon *facts* unknown to the trial judge. This is fatal to appellant's claim. The Court of Appeals said in *Jackson v. State*, 218 Md. 25, 145 A.2d 234 (1958):

> By the decided weight of authority * * * the [*coram nobis*] remedy is not broad enough to reach every case in which there has been an erroneous or unjust judgment on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial, and unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment. *See also Hawks v. State*, 162 Md. 30 [157 A. 900 (1932)]; *Bernard v. State*, 193 Md. 1 [65 A.2d 297 (1949)]; *Madison v. State*, 205 Md. 425 [109 A.2d 96 (1954)]; *Johnson v. State*, 215 Md. 333 [138 A.2d 372 (1958)]; *Johns v. State*, 216 Md. 218 [140 A.2d 56 (1954)].

*Id.* at 27–28, 145 A.2d 234.

The *Jackson* Court relied on this "decided weight of authority" and affirmed the trial court's denial of a writ of *coram nobis* on the ground that the defendant had failed to allege facts unknown to the court when the judgment was entered. *See id.* at 27, 145 A.2d 234.

In *Ruby*, we were called upon to decide the same question at issue in *Jackson*, viz: Whether *coram nobis* provided relief only in cases in which the defendant could show facts that were unknown at the time judgment was entered, which would have prevented the entry of judgment, or whether, as appellant contended, the writ of *coram nobis* was less restrictive and provided "a broad post-conviction remedy in the absence of [grounds for] other statutory relief." *Ruby*, 121 Md.App. at 174, 708 A.2d 1080.

As mentioned earlier, the appellant in *Ruby* "requested and the court granted to appellant a writ of error *coram nobis* for

the sole and express purpose of permitting him to proceed with a 'belated appeal' from the denial of his motion for new trial." *Id.* at 172, 708 A.2d 1080. After thoroughly reviewing the relevant authority concerning the issue of whether a writ of *coram nobis* could be granted when the facts upon which the petition for the writ of *coram nobis* were known to the trial judge when the judgment was entered, we said:

> The trial court's grant of a writ of error *coram nobis* was inappropriate because the error appellant relies upon to validate the issuance of the writ does not relate to any fact not known at either the hearing on his motion for new trial or at appellant's original trial that would have affected the entry of judgment. The indirect and ultimate purpose of appellant's efforts is to place "newly discovered evidence" before the court and to correct an adjudicated issue of "fact" that appellant believes has been wrongly decided. A writ of error *coram nobis* does not lie for such purposes. Hence, we are without jurisdiction to entertain any arguments appellant might have raised by the grace of that writ.

*Id.* at 177, 708 A.2d 1080.

The *Ruby* Court distinguished the *Jones* case. In *Jones,* the error relied upon by appellant to validate the issuance of the writ did relate to a previously unadjudicated fact not known or available to the trial judge when the original judgment was entered (plea allegedly made by defendant while under the intoxicating influence of heroin), which, if it had been known, would have affected the court's entry of judgment. *See id.* at 178–80, 708 A.2d 1080.

■ Appellant does not attempt to distinguish the *Ruby* case from the case *sub judice*. Instead, he boldly contends in his brief that we were wrong in *Ruby* in holding that a writ of *coram nobis* may be granted only in situations where the error inheres in facts unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment. According to appellant,

> [t]he language contained in *Ruby* is in direct contradiction to the holding in *United States v. Morgan,* 346 U.S. 502 [74

S.Ct. 247, 98 L.Ed. 248] (1954), which stated that defects of a fundamental magnitude in a criminal proceeding may be collaterally attacked by use of the Writ of Error Coram Nobis where no other means of relief is available.

Appellant's reading of *Morgan* is too expansive. In fact, the Court in *Morgan* intimated that the principles it was enunciating should be narrowly construed. The Court said, "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Morgan*, 346 U.S. at 511, 74 S.Ct. 247.

In *Morgan*, the defendant appeared in federal court without an attorney on December 19, 1939, and pled guilty to several counts in an indictment; he was sentenced by the United States District Court to four years imprisonment. *See id.* at 503, 74 S.Ct. 247. In 1950, after Morgan had completed his federal sentence, he was convicted in New York of the state crime of attempted burglary in the third degree. *See id.* at 513, 74 S.Ct. 247 (Minton, J. dissenting). Because of his 1939 federal conviction, the New York Court sentenced Morgan as a multiple offender, causing him to receive a longer term than would otherwise have been the case. *See id.* at 503–04, 74 S.Ct. 247. Approximately fourteen months after his New York state conviction and some twelve years after his federal conviction, Morgan filed an "Application for a Writ of Error *Coram Nobis*" in the Federal District Court where he had been convicted in 1939. *See id.* at 504, 74 S.Ct. 247. Morgan asked that the conviction be set aside because "he neither had the assistance of counsel nor was informed of his constitutional right to counsel, and at the time was only nineteen years of age and without knowledge of the law." *Id.* at 514, 74 S.Ct. 247 (Minton, J., dissenting).

The *Morgan* court noted at the outset that motions in the nature of writs of *coram nobis* were not specifically authorized by any federal statute. *See id.* at 506, 74 S.Ct. 247. The question presented was whether Congress had impliedly authorized the power of the courts to grant such writs by the "all

writs section" of the Judicial Code, 28 U.S.C. § 1651(a). *See id.* Section 1651(a) provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(Footnote omitted.)

The *Morgan* Court, in a five-four decision, held that federal courts were impliedly authorized to issue writs of *coram nobis* under section 1651(a). *See id.* at 506–07, 511, 74 S.Ct. 247. To come under the umbrella of the "All Writs Act," Morgan was required to show, *inter alia,* that the writ was "agreeable to the usage and principles of law." *See id.* at 506, 74 S.Ct. 247. The *Morgan* majority was of the view that a writ of *coram nobis* was agreeable to the usage and principles of common law and therefore could be issued by a federal court. *See id.* at 506–11, 74 S.Ct. 247. In arriving at this conclusion, the Court referred to 2 Tidd's Practice 1136–37 (4th American ed. 1856), where Mr. Tidd expressed the belief that the writ of *coram nobis* could be issued only in cases in which there was an error in fact—not an error of law. *See Morgan,* 346 U.S. at 507 n. 9, 74 S.Ct. 247. Tidd said:

> [I]f a judgment in the King's Bench be erroneous in matter of *fact* only, and not in point of law, it may be reversed in the same court, by writ of error *coram nobis,* or *quae coram nobis* resident; so called, from its being founded on the record and process, which are stated in the writ to remain in the court of the lord the king, before the king himself; as where the defendant, being under age, appeared by attorney, or the plaintiff or defendant was a married woman at the time of commencing the suit, or died before verdict, or interlocutory judgment; for error in fact is not the error of the judges and reversing it is not reversing their own judgment. So, upon a judgment in the King's Bench, if there be error in the *process,* or through the default of the clerks, it may be reversed in the same court, by writ of error coram nobis: * * *.

*Id.* at 507 n. 9, 74 S.Ct. 247 (quoting 2 Tidd's Practice, *supra,* 1136–37). The *Morgan* Court rejected the limited scope of the writ as set forth in Tidd's Practice and held that a writ of *coram nobis* could be issued even if the writ was not based on a fact unknown to the Court when judgment was entered. *See id.* at 507–08, 74 S.Ct. 247. The Court said:

> Although the scope of the remedy at common law is often described by references to the instances specified by Tidd's Practice, its use has been by no means so limited.[6] The

---

**6.** Interestingly, of the cases used to illustrate the point that the writ was not as restrictive as Tidd's Practice had said it was, the only case cited by the court that embraces a more expansive utilization of the writ is the *O'Connell* case (*O'Connell v. The Queen,* 2 Cl. & Fin. (House of Lords Reps.) 155, 233, 252 (1844)). At least one of the cases referenced—*Ex Parte Toney,* 11 Mo. 661 (1848)—dealing with the imprisonment of a slave, would seem to illustrate, if anything, that the writ of *coram nobis* was indeed as narrow as Tidd's Practice represented it to be. In *Toney,* a slave named Toney escaped from Tennessee and fled to Missouri where he assumed a new name. *See id.* at 662. He was charged in Missouri with several grand larcenies and was indicted as a free person, convicted, and sentenced to eleven years imprisonment. *See id.* Under Missouri law, however, a slave could not be imprisoned for grand larceny. After Toney's conviction, his owner brought to the court's attention the fact that the defendant was a slave. *See id.* The slave's owner petitioned the court for his release and the court held:

> The judgment of the court is, however, erroneous, and on the facts assumed, the party [slave owner] is entitled to some remedy. The error is one·of fact. As the record stands it warrants the judgment, and it is an error of fact which produces this difficulty. If the prisoner was a slave and it so appeared on the record, the judgment would be clearly erroneous. It is settled, that for an error in fact in the proceedings of a court of record, a writ of error *coram nobis* will lie to revoke the judgment, whether it be a court of civil or criminal jurisdiction. 2 Tidd, 1191–2.

> If a judgment is rendered against an infant who appears by attorney, this is an error of fact for which a writ of error *coram nobis* will lie. So, if a judgment is rendered against a married woman who is sued as a feme sole; and so, it is conceived, of a judgment sentencing an infant under sixteen years of age to imprisonment in the Penitentiary, as our statute does not permit such punishment to be inflicted on him.

> No difference is seen between those cases and that now before the Court, and as the prisoner consents and is anxious for his discharge, we are of opinion that the Criminal Court of St. Louis county can award the writ and give the party such relief as he is entitled to by law.

House of Lords in 1844 took cognizance of an objection through the writ based on a failure properly to swear witnesses. It has been used, in the United States, with and without statutory authority but always with reference to its common law scope—for example, to inquire as to the imprisonment of a slave not subject to imprisonment, insanity of a defendant, a conviction on a guilty plea through the coercion of fear of mob violence, failure to advise of right to counsel. An interesting instance of the use of *coram nobis* by the court of Errors of New York is found in *Davis v. Packard,* 8 Pet. 312, 8 L.Ed. 957. It was used by the Court of Errors, and approved by this Court, to correct an error "of fact not apparent on the face of the record" in the trial court, to wit, the fact that Mr. Davis was consul-general of the King of Saxony and therefore exempt from suit in the state court.

*Id.* (citations omitted) (footnote omitted).

As previously noted, the majority in *Morgan* rejected, in a somewhat oblique fashion, the holding in cases from other jurisdictions (such as Maryland), when it observed:

There are suggestions in the Government's brief that the facts that justify *coram nobis* procedure must have been unknown to the judge. Since respondent's youth and lack of counsel were so known, it is argued, the remedy of *coram nobis* is unavailable. One finds similar statements as to the knowledge of the judge occasionally in the literature and cases of *coram nobis.* Such an attitude may reflect the rule that deliberate failure to use a known remedy at the time of trial may be a bar to subsequent reliance on the defaulted right. The trial record apparently shows Morgan was without counsel. He alleges he was nineteen, without knowledge of law and not advised as to his rights. The record is barren of the reasons that brought about a trial without legal representation for the accused. As the plea was "guilty" no details of the hearing appear. In this state

*Id.* at 663.

of the record we cannot know the facts and thus we must rely on respondent's allegations.

\* \* \*

Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid.

*Id.* at 511–13, 74 S.Ct. 247 (citations omitted) (footnotes omitted).

Justice Minton, in his dissent, encapsulates the narrow holding in *Morgan* as follows:

The Court now holds that the validity of a conviction by a federal court for a federal offense may be inquired into, long after the punishment imposed for such offense has been satisfied, by a "motion in the nature of a writ of error *coram nobis*" whenever the federal conviction is taken into account by a state court in imposing sentence for a state crime. The basis for this highly unusual procedure is said to be the all-writs section of the Judicial Code, 28 U.S.C. § 1651(a),....

*Id.* at 514, 74 S.Ct. 247 (Minton, J., dissenting).

The Maryland Court of Appeals decided *Jackson* four years after *Morgan.* *Jackson* is in direct conflict with *Morgan* insofar as *Morgan* allows the court to entertain a petition for a writ of *coram nobis* to consider facts known to the trial judge when the original judgment was entered. But this does not mean that the *Jackson* Court should have followed *Morgan* or that we should have disregarded the *Jackson* holding. Under rules of *stare decisis,* Maryland courts are obliged to follow Supreme Court decisions only when the Supreme Court speaks as to federal constitutional principles. *State v. Matusky,* 343 Md. 467, 490, 682 A.2d 694 (1996). In *Morgan,* the

Supreme Court decided no federal constitutional issues.[7] Rather, it decided only an issue of federal jurisdiction, i.e., whether the "all writs" section of 28 U.S.C. 1651(a) was broad enough to allow federal courts to issue writs of *coram nobis* under certain circumstances and, if so, under what circumstances.

## B.  ISSUE II

### Denial of Motion for New Trial as to the Guilty Plea Entered on February 18, 1994, and the Nolo Contendere Plea Accepted on October 17, 1994

Maryland Rule 4–331(b) provides:

---

7.  In his brief, appellant says:

> In light of *Morgan,* even if [c]oram [n]obis [r]elief under Maryland common-law only extended to matters of fact, *Morgan* appears to indicate that due process requires that [c]oram [n]obis or some other avenue of post-trial relief be afforded by the States for correction of convictions with defects of a "fundamental character."

Appellant's reading of *Morgan* is flawed. The words "due process" do not appear anywhere in the *Morgan* opinion. Nor does the Court make *any* mention of what post trial rights must be afforded to a defendant who has been convicted, in a state court, of a crime.

Even if Maryland allowed *coram nobis* relief as broad as that allowed in *Morgan,* appellant still would be unlikely to prevail. The *Morgan* Court said the writ of *coram nobis* may be allowed "only under circumstances compelling such action to achieve justice." Appellant, who was represented by counsel when the trial court accepted the pleas on February 18 and October 17, 1994, made no showing in his applications for writs of *coram nobis* that justice was not done here. He does not allege that he did not know the nature of his plea of guilty or of *nolo contendere* or its direct consequences, nor does he allege that if the court had complied with Rule 4–242 he might have rejected the plea and proceeded to trial. Appellant received a very lenient sentence in both cases and, from all that appears in the record, simply took an attractive deal offered by the State and ignored the fact that the trial court had not complied with Rule 4–242. To allow the appellant to withdraw his pleas more than four years after judgment, in all likelihood, would make it impossible for the State to bring the defendant to trial. This would not "achieve justice." It would allow a defendant to escape the consequences of his acts based upon a technicality that did not affect him substantively.

*Revisory power.*—The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:

\* \* \*

(2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.

Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity.

The language used in that last sentence of Rule 4–331(b) is almost identical to the words used in the last sentence of Rule 2–535(b), and in substance, the two provisions are the same. Rule 2–535(b) reads:

*Fraud, mistake, irregularity.* On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

Appellant contends that there was an irregularity in procedure in both Case Nos. 1 and 2 due to the fact that the trial court, in accepting the guilty plea and the plea of *nolo contendere* failed to comply with the dictate of Maryland Rule 4–242.[8] We will assume, *arguendo*, that this is true. Never-

---

**8.** Appellant also contends that a "mistake" was committed in both cases. Although no Maryland cases have been found that discuss the phrase "fraud, mistake, or irregularity" as used in Rule 4–331(b), numerous cases have discussed those words when interpreting Rule 2–535. *See Tandra S. v. Tyrone W.,* 336 Md. 303, 315–18, 648 A.2d 439 (1994), and cases therein cited. The word "mistake" as used in Rule 2–535(b) "is limited to a jurisdictional error, i.e., where the court has no power to enter judgment." *Id.* at 317, 648 A.2d 439. As for the term "irregularity," the Court in *Tandra S.* said:

As a grounds for revising an enrolled judgment, irregularity, as well as fraud and mistake, has a very narrow scope. *See Autobahn, supra,* 321 Md. at 562, 583 A.2d 731. In *Weitz, supra,* 273 Md. at 631, 331 A.2d 291, we explained that:

"irregularity, in the contemplation of the rule, usually means irregularity of process or procedure . . . and not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged."

An example of an irregularity that would permit a court to set aside a judgment existed in *Maryland Lumber v. Savoy Constr. Co.,* 286 Md.

theless, appellant failed to allege that he acted to set aside the judgments in Case Nos. 1 and 2 with ordinary diligence. This is dispositive—unless Rule 4–331 is to be interpreted differently from its civil counterpart.

The Court said in *J.T. Masonry Co. v. Oxford Constr. Servs.*, 314 Md. 498, 551 A.2d 869 (1989):

> The power of the circuit court to revise a final judgment which has been entered for more than thirty days requires, in addition to fraud, mistake, irregularity or clerical error, "that the person seeking the revision acts with ordinary diligence and in good faith upon a meritorious cause of action or defense." *Platt v. Platt*, 302 Md. 9, 13 [485 A.2d 250] (1984). The requirement of ordinary diligence is well settled. *See Maryland Lumber Co. v. Savoy Constr. Co.*, 286 Md. 98 [405 A.2d 741] (1979); *Hughes v. Beltway Homes, Inc.*, 276 Md. 382 [347 A.2d 837] (1975); *Weitz v. MacKenzie*, 273 Md. 628 [331 A.2d 291] (1975); *Owl Club, Inc. v. Gotham Hotels, Ltd.*, 270 Md. 94 [310 A.2d 534] (1973); *Cohen v. Investors Funding Corp.*, 267 Md. 537 [298 A.2d 154] (1973); *Ventresca v. Weaver Bros.*, 266 Md. 398 [292 A.2d 656] (1972); *Harvey v. Slacum*, 181 Md. 206 [29 A.2d 276] (1942).

*See id.* at 506, 551 A.2d 869; *Tandra S. v. Tyrone W.*, 336 Md. 303, 314, 648 A.2d 439 (1994).

The obvious reason for engrafting the ordinary diligence requirement onto Rule 2–535(b) motions for new trial is to preserve the finality of judgment unless it would be inequitable or unfair to do so. Litigation, including criminal litigation, must come to an end sometime. Persons situated like appellant have a well defined means by which they may complain if a trial judge fails to comply with Rule 4–242. Rule 4–242(f) provides, in pertinent part:

---

98, 405 A.2d 741 (1979). In that case, we held that the failure of a clerk to notify a party of an entry of judgment constituted an irregularity, justifying the court to set aside the enrolled judgment. *Id.* at 100–01, 405 A.2d 741.
*Id.* at 318, 648 A.2d 439.

After the imposition of sentence, on motion of a defendant filed within ten days, the court may set aside the judgment and permit the defendant to withdraw a plea of guilty or nolo contendere if the defendant establishes that the provisions of section (c) or (d) of this Rule were not complied with or there was a violation of a plea agreement entered into pursuant to Rule 4–243. The court shall hold a hearing on any timely motion to withdraw a plea of guilty or nolo contendere.

If a defendant in a criminal case were able, with impunity, to ignore the time limits set forth in Rule 4–242(f) and simply file a motion for new trial whenever it suited his or her convenience, convictions based on guilty pleas or pleas of *nolo contendere* would be forever in legal limbo and the public policy favoring finality of judgments would be thwarted. We hold that a defendant who files a motion for new trial to set aside a guilty plea or a *nolo contendere* plea must allege facts showing that he/she has acted with ordinary diligence and good faith. Here, appellant does not allege in his motions that he was *ever* ignorant of the fact that the court below had failed to comply with Rule 4–242. Appellant gives no hint in his motion as to why he waited over three years after the judgment was final before filing a new trial motion, nor does he set forth any fact showing that he acted in good faith or with due diligence. Thus, the trial court did not err in denying the motion for new trial.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**