## BRADY *v.* STATE

[No. 204, September Term, 1959.]

 

*Decided May 19, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*E. Clinton Bamberger,* with whom was *George B. Woelfel* on the brief, for the appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Stedman Prescott, Jr., Deputy Attorney General,* and *C. Osborne Duvall, State's Attorney for Anne Arundel County,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

John L. Brady (Brady) and Charles D. Boblit (Boblit) were indicted for the murder of William Brooks committed in the perpetration of a robbery. Brady was tried first before a jury. Boblit was tried by the court sitting without a jury. Both were found guilty of murder in the first degree and sentenced to death. The evidence being sufficient to sustain the judgments, both convictions were affirmed by this Court in *Boblit v. State,* 220 Md. 454, *sub nom. Brady v. State,* 154 A. 2d 434 (1959).

In extra-judicial statements and at his trial, Brady admitted participation in the robbery, but denied that he had

killed the victim. His claim was that Boblit was the actual murderer. It was for this reason that counsel for Brady in his argument to the jury, though admitting that the accused was guilty of murder in the first degree, plead with the jury to add to its verdict in that degree the words "without capital punishment." The jury declined to do so.

On the appeal in *Boblit v. State, supra,* the sole contention raised on behalf of Brady was that his confession had been obtained by force and a promise of reward. It was conceded, however, that he had not been mistreated by the police. We held that the trial court was not in error in accepting the denial by the police that a promise of reward had been made.

At the subsequent trial of Boblit, the State offered as evidence a transcription of what purported to be an oral statement made by Boblit to the police on July 9, 1958. The unsigned statement, after setting forth that on July 2, 1958, he (Boblit) had told the police that Brady had strangled William Brooks and that he wanted to change his story, goes on to say, among other things, that at the suggestion of Brady he (Boblit) "took and twisted * * * [his] shirt sleeve and choked him [the victim]," but he concluded by saying that "[i]t was his [Brady's] idea to hold him up and not mine and it was his idea to strangle him; I wanted to shoot him." The statement was excluded by the trial court upon objection because it was not signed by Boblit. Later on in the trial Boblit testified—as he had originally stated in his signed statements—that Brady had strangled William Brooks and that the unsigned statement was "not true."

The unsigned statement was in the possession of the State when Brady was tried, but it was not offered in evidence; nor was counsel for Brady then informed of its existence. Brady claims he did not know anything about the statement until after his conviction had been affirmed by this Court. It came to the attention of one of Brady's counsel when he was reviewing the transcript of Boblit's trial preparatory to making a clemency plea to the Governor on behalf of Brady. When requested, in October of 1959, a copy was supplied by the State.

On November 12, 1959, using the unsigned statement as

the sole basis for his motion, Brady moved the court to "set aside the verdict and the sentence and to grant him a new trial" on the ground that "evidence material to his defense ha[d] been newly discovered since his trial." When the trial court denied the "motion for a new trial" for the reason that it had found "nothing in the trial of the case, or in any matter subsequently submitted to the court which was prejudicial to the rights of the defendant Brady," this appeal was taken.

Brady, asserting denial of his constitutional right to due process, contends that his conviction of murder in the first degree was vitiated by the failure of the State to disclose the unsigned statement either before or at his trial. On the contrary, the State, claiming that the statement could not have been used as evidence for any purpose on behalf of Brady even if it had been known to him, contends that failure to disclose the statement—which had not been intentionally suppressed— was not prejudicial. We think the questions presented are not properly before us on this appeal.

The pleading as filed combined a motion for a new trial with a motion to set aside the judgment and sentence. Whether the motion to strike was intended to invoke the power of the trial court to correct the sentence pursuant to the authority conferred by Maryland Rule 744 a by striking out an illegal sentence and imposing a legal one, or whether the motion was intended to be one to strike out or reduce the sentence pursuant to the power conferred by Rule 744 c, is by no means clear. But, since we must affirm or dismiss this appeal in any event for other reasons, the nature of the motion to set aside the judgment and sentence is relatively unimportant.

If the motion is treated as one for a new trial, as the trial court did, it is clear that the action of that court in overruling it is not reviewable by this Court. *Madison v. State,* 205 Md. 425, 433, 109 A. 2d 96, 99 (1954). See also *Colter v. State,* 219 Md. 190, 148 A. 2d 561 (1959) ["an appeal will not lie from an order denying a new trial, at least where it is not claimed that there was an abuse of discretion"]. On the other hand, if the motion is treated as one to strike out a judgment and sentence, it is equally clear that the provisions

of the Post Conviction Procedure Act (P. C. P. A.) referred to below bar a direct appeal to this Court from an order refusing the motion.

There is only one way in which Brady may effectively obtain a review by this Court of his claim that he was deprived of his constitutional right to due process, and that is by instituting a proceeding for relief under the provisions of the P. C. P. A., codified as Code (1959 Cum. Supp.), Art. 27, §§ 645A-645J. The pertinent parts of § 645A, *supra,* read as follows:

"(a). Any person convicted of a crime and incarcerated under sentence of death or imprisonment, * * * who claims that the sentence or judgment was imposed *in violation of the Constitution of the United States or the Constitution or laws of this State,* or that the court * * * was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy, may institute a proceeding * * * to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction. .

(b). The remedy * * * is not a substitute for, nor does it affect any remedies which are incident to the proceedings in the trial court * * *, or any remedy of direct review of the sentence or conviction. A petition for relief * * * may be filed at any time. *Hereafter*[1] *no appeals to the Court of Appeals of Maryland in habeas corpus or coram nobis cases, or from other common law or statutory remedies which have heretofore been available for challenging the validity*

---

1. The P. C. P. A. took effect June 1, 1958.

*of incarceration under sentence of death or impris-
onment shall be permitted or entertained * * *."*
[Emphasis added.]

As was pointed out by Judge Henderson in the recent case of *State v. D'Onofrio,* 221 Md. 20, 155 A. 2d 643 (1959), in quoting a comment by the Commissioners who prepared the Uniform Post-Conviction Act, "[t]he aim of this section [645A in the Maryland statute] is to bring together and consolidate into one simple statute all the remedies, *beyond those that are incident to the usual procedures of trial and review,* which are at present available for challenging the validity of a sentence * * *." [Emphasis added.]

While the P. C. P. A. did not abrogate the remedies formerly available under writs of habeas corpus and coram nobis and other common law and statutory remedies, it clearly took away the right of appeal from an order denying any of them. The act further provides, however, that "any person, including * * * [the State], aggrieved by the order * * * passed in accordance with * * * [the act]," may apply to this Court within a 30-day period for leave to prosecute an appeal. See § 645I, *supra.*

For the reasons stated this appeal will be dismissed, but without prejudice to the appellant to seek post conviction relief.

*Appeal dismissed.*