760 A.2d 647

**Pasquale Joseph SKOK**

v.

**STATE of Maryland.**

No. 22, Sept. Term, 1999.

Court of Appeals of Maryland.

Oct. 10, 2000.

54

Peter A. Prevas (Konstantine J. Prevas of Prevas & Prevas, on brief), Baltimore, for Petitioner/Cross-Respondent.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for Respondent/Cross-Petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL, and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to resolve important questions concerning the right to appeal in a coram nobis action and the issues which may properly be raised in such an action.

## I.

The plaintiff, Pasquale Joseph Skok, is a native of Italy and is now about 26 years old. He has been a lawful permanent resident of the United States since he was 14 years old when he was legally adopted by William H. Skok and Dorothy M.

Skok who are United States' citizens by birth. Skok presently resides with his parents in College Park, Maryland.

On February 18, 1994, in the Circuit Court for Prince George's County, Skok pled guilty to possession of cocaine, a misdemeanor proscribed by Maryland Code (1957, 1987 Repl. Vol.), Art. 27, § 287. The Circuit Court accepted the guilty plea, sentenced Skok to imprisonment for two years, and suspended all but the time served of three days.

In October 1994, again in the Circuit Court for Prince George's County, Skok entered a plea of nolo contendere to another charge of possession of cocaine in violation of Art. 27, § 287. The court accepted the plea and sentenced Skok to imprisonment for one day, with credit for the one day he had spent in jail.

Skok was represented by counsel in both of the 1994 cases. In neither case was there a motion to withdraw the pleas pursuant to Maryland Rule 4–242(f). Skok also did not file an application for leave to appeal pursuant to Code (1974, 1989 Repl.Vol.), § 12–302(e) of the Courts and Judicial Proceedings Article and Rule 8–204.

Subsequently, the United States Immigration and Naturalization Service initiated deportation proceedings against Skok based upon the judgments in the 1994 circuit court drug possession cases. Apparently a deportation order was issued, and Skok's appeal to the Board of Immigration Appeals is pending.

On November 24, 1997, Skok instituted the present action by filing in the Circuit Court for Prince George's County a pleading entitled "Petition For Writ Of Error Coram Nobis, Motion For New Trial And Petition For Writ Of Audita Querela." Skok sought orders vacating the criminal judgments. According to Skok, both criminal judgments should be vacated because, in accepting the guilty plea and the nolo contendere plea, the Circuit Court failed to comply with the

requirements of Rule 4–242(c) and (d).[1] Skok asserted that the Circuit Court, in accepting his guilty plea in February 1994, violated Rule 4–242(c) because the court did not require that the facts supporting the plea be read in open court in the defendant's presence, did not expressly find on the record that the factual basis supported a finding of guilty, did not advise Skok of the possible consequences of his plea, and did not properly advise Skok of his right to a jury trial. Skok claimed that the Circuit Court, in accepting his nolo contendere plea in October 1994, violated Rule 4–242(d) because there was no examination of Skok in open court for a determination that the plea was made voluntarily, with an understanding of the nature of the charge and the consequences of the plea. Skok also contended that due process principles were violated because both pleas were involuntary, that they were not know-

---

1. Rule 4–242 provides in pertinent part as follows:

\* \* \*

"(c) **Plea of guilty.** The court may accept a plea of guilty only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

"(d) **Plea of nolo contendere.** A defendant may plead nolo contendere only with the consent of court. The court may require the defendant or counsel to provide information it deems necessary to enable it to determine whether or not it will consent. The court may accept the plea only after it determines, upon an examination of the defendant on the record in open court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, that the defendant is pleading voluntarily with understanding of the nature of the charge and the consequences of the plea. In addition, before accepting the plea, the court shall comply with section (e) of this Rule. Following the acceptance of a plea of nolo contendere, the court shall proceed to disposition as on a plea of guilty, but without finding a verdict of guilty. If the court refuses to accept a plea of nolo contendere, it shall call upon the defendant to plead anew."

\* \* \*

ingly and intelligently made, and that there was no valid waiver of his rights, including his right to jury trials.

Skok argued in the Circuit Court that the violations of Rule 4–242 and due process entitled him to the "post-conviction relief" of vacating the 1994 judgments. Skok contended that relief under a writ of error coram nobis is available "where relief is unavailable under the post-conviction procedure act" and that writs of error coram nobis "have been used in modern practice to right a judicial wrong where no other remedies are available." Alternatively, Skok asserted that the alleged violations of Rule 4–242 constituted " 'mistake' and/or 'irregularity' " and warranted post conviction relief under Rule 4–331(b).[2] Finally, Skok argued that the "ancient common law Writ of *Audita Querela* exists in Maryland Common Law," and that, "although the Writ of *Audita Querela* has fallen into disuse it is still available . . . as a mechanism to obtain relief from the consequences of a judgment of conviction which were unknown at the time of the entry of conviction" and "where the equities of the case compel such a result." [3]

---

2. Rule 4–331 provides in relevant part as follows (emphasis added):
 **"Rule 4–331. Motions for new trial.**
 (a) **Within ten days of verdict.** On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial.
 (b) **Revisory power.** The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial:
 (1) in the District Court, on motion filed within 90 days after its imposition of sentence if an appeal has not been perfected;
 (2) in the circuit courts, on motion filed within 90 days after its imposition of sentence.
 Thereafter, *the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity."*
 \* \* \*

3. In *Job v. Walker*, 3 Md. 129 (1852), a judgment debtor filed an action to be relieved from a judgment on the ground that, subsequent to the judgment, certain credits had accrued and should be applied to the judgment. This Court stated (3 Md. at 132):
 "The ancient practice in a case like the present, was by *audita querela.* Blackstone in his *Commentaries, (3 vol., page 405,)* says: 'An *audita querela* is where a defendant, against whom a judgment is recovered, and who is therefore in danger of execution, or, perhaps,

actually in execution, may be relieved upon good matter of discharge which has happened since the judgment, as if the defendant hath paid the debt to the plaintiff without procuring satisfaction to be entered on the record.' In latter years, this proceeding, both in England and in this country, has fallen almost entirely into disuse. Indeed we know of no instance in Maryland where it has ever been resorted to. In 1 *Bos. and Pul.*, 428, Chief Justice Eyre says: 'I take it to be the modern practice, to interpose, in a summary way, in all cases where the party would be entitled to relief on an *audita querela.*' And in 4 *Burr.*, 2287, it is asserted as a general rule, that the courts will not put the defendant to the trouble and expense of an *audita querela*, but will relieve him in a summary way on motion."

*See Jones v. George*, 80 Md. 294, 299, 30 A. 635, 636 (1894) ("The *audita querela* has been superseded in modern practice by motion to the Court"); *Starr v. Heckart and Young*, 32 Md. 267, 272, 1870 WL 3945 (1870) ("To a judgment ... rendered under such circumstances, a party would undoubtedly be entitled to relief, by an *audita querela* at common law, or by summary motion according to the practice in this State"); *Seevers v. Clement*, 28 Md. 426, 436 (1868); *Huston, et al. v. Ditto, et al.*, 20 Md. 305, 330 (1863); *Docura v. Henry*, 4 H. & McH. 480 (Provincial Ct. 1718); 1 John Prentiss Poe, *Pleading and Practice*, § 115, at 104 n. 2 (3d ed. 1897) ("*Audita querela* is now superseded by motion").

A few twentieth century state court cases have indicated that *audita querela* is available to challenge judgments in criminal cases. *Keith v. State*, 121 Fla. 432, 435, 163 So. 884, 885 (1935); *Balsley v. Commonwealth*, 428 S.W.2d 614, 616 (Ky.1968); *Robertson v. Commonwealth*, 279 Ky. 762, 764–765, 132 S.W.2d 69, 70–71 (1939).

More recently, a few federal district courts have held that immigrants facing deportation based on criminal judgments may use *audita querela* to challenge the judgments where the "equities" show that they should have relief against the consequences of the judgments. *United States v. Salgado*, 692 F.Supp. 1265 (E.D.Wash.1988); *United States v. Ghebreziabher*, 701 F.Supp. 115 (E.D.La.1988). *See also United States v. Acholonu*, 717 F.Supp. 709 (D.Nev.1989) (concluding that *audita querela* is available to challenge criminal judgments, but that the equities in the case before the court did not justify the issuance of a writ of *audita querela* ). Other federal courts, including several appellate courts, have expressed skepticism about or have rejected the availability of *audita querela* under those circumstances. *Doe v. I.N.S.*, 120 F.3d 200, 204 (9th Cir.1997) (holding that "*audita querela*, [is] unavailable on purely equitable grounds" and "that a writ of *audita querela*, if it survives at all, is available only if a defendant has a legal defense or discharge to the underlying judgment"); *United States v. Johnson*, 962 F.2d 579, 582 (7th Cir.1992) ("Equities or gross injustice, in themselves, ... will not provide a basis for [*audita querela* ] relief"); *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir.1991) ("*audita querela*, is not available to vacate an otherwise final criminal conviction on purely equitable grounds"); *United States v. Holder*, 936 F.2d 1, 5 (1st Cir.1991); *United States v. Ayala*, 894 F.2d 425, 426 (D.C.Cir.1990) ("The only circumstance, if any, in which the writ [of *audita querela* ] could furnish a basis for vacating a criminal conviction would be if the defendant raised a legal objection not cognizable under the existing scheme of federal postcon-

The Circuit Court initially issued an order denying "without prejudice" Skok's petition for a writ of error coram nobis, his petition for a writ of *audita querela,* and his motion for new trials. The court's order stated that the motion for new trials was untimely. With regard to coram nobis, the court, *inter alia,* stated that "a Writ of Error Coram Nobis will not be granted where the defendant has another adequate remedy such as a post conviction proceeding." Skok filed a motion for reconsideration, emphasizing "that post-conviction relief is not available since at the time of filing the Petitions, Skok was neither incarcerated under sentence of imprisonment nor on parole or probation." [4] Skok reiterated his arguments that Rule 4–242 was violated and "that the . . . pleas in both cases are defective under *Boykin v. Alabama,* 395 U.S. 238[, 89

---

viction remedies"); *United States v. Kimberlin,* 675 F.2d 866, 869 (7th Cir.1982); *United States v. Garcia–Hernandez,* 755 F.Supp. 232, 235 (C.D.Ill.1991).

In the present case, because Skok later expressly abandoned his reliance upon *audita querela,* we need not express any opinion upon the matters discussed in the above-cited cases.

4. The Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A(a)(1), provides in pertinent part as follows (emphasis added):

"(a) *Right to institute proceeding to set aside or correct sentence; time of filing initial proceeding.*—(1) Subject to the provisions of paragraphs (2) and (3) of this subsection, any person convicted of a crime and either *incarcerated under sentence of death or imprisonment or on parole or probation,* including any person confined or on parole or probation as a result of a proceeding before the District Court who claims that the sentence or judgment was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error which would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common-law or statutory remedy, may institute a proceeding under this subtitle in the circuit court for the county to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction."

\* \* \*

S.Ct. 1709, 23 L.Ed.2d 274] (1969)." The Circuit Court denied the motion for reconsideration, stating that "[a] Writ of Error Coram Nobis is an extreme remedy and is not appropriate relief in this case."

Skok appealed to the Court of Special Appeals, arguing that he was entitled, by coram nobis or a motion for new trial, "to collaterally challenge ... the guilty [and nolo contendere] pleas in two separate convictions for possession of cocaine entered in ... 1994." (Skok's brief in the Court of Special Appeals at 1). Skok abandoned his reliance on *audita querela*, stating that he "does not appeal from the denial of his Petition for Writ of *Audita Querela*" (*id.* at 2, n. 1). Skok contended that a writ of error coram nobis was "viable in Maryland as a means of collaterally attacking" criminal judgments "when Post–Conviction Relief does not exist under" the Maryland Post Conviction Procedure Act (*id.* at 5) and that the 1994 judgments were infirm because of the violations of Rule 4–242(c) and (d), as well as the constitutional principles set forth in *Boykin v. Alabama, supra.* Skok acknowledged that his motion for new trials was untimely unless there was fraud, mistake, or irregularity within the meaning of Rule 4–331(b), and suggested that relief based on "mistake or irregularity" should be "as broad as Coram Nobis Relief." (Appellant's brief in the Court of Special Appeals at 14–15).

The State, in its brief to the Court of Special Appeals, moved to dismiss Skok's appeal, relying upon language in the Maryland Post Conviction Procedure Act, Art. 27, § 645A(e), concerning the right to appeal in habeas corpus cases. The State also argued that the Circuit Court's judgment was correct.

The Court of Special Appeals denied the State's motion to dismiss the appeal and affirmed the judgment of the Circuit Court. *Skok v. State,* 124 Md.App. 226, 721 A.2d 259 (1998). Although the intermediate appellate court did state that Rules 4–242(c) and 4–242(d) had been violated in Skok's two trials for possession of cocaine, *Skok,* 124 Md.App. at 228–229, 721 A.2d at 260–261, the court held that, in Maryland, coram nobis

relief can only be granted when "based on facts not known to the trial judge when the plea was accepted." *Skok,* 124 Md.App. at 234, 721 A.2d at 263. The Court of Special Appeals continued: "Both [convictions] were based on careless procedural errors committed by the trial judge, not upon *facts* unknown to the trial judge. This is fatal to appellant's claim." *Ibid.* With regard to Skok's motion for a new trial based on "mistake" or "irregularity" under Rule 4–331(b), the Court of Special Appeals "assumed, *arguendo,*" that the violations of Rule 4–242(c) and (d) constituted "irregularity" within the meaning of Rule 4–331(b), but held that Skok had failed to act "with ordinary diligence." *Skok,* 124 Md.App. at 242–243, 721 A.2d at 267–268.

Skok filed in this Court a petition for a writ of certiorari, challenging both the holding of the Court of Special Appeals concerning the availability of coram nobis relief and the decision that he was not entitled to relief under Rule 4–331(b). The State filed a conditional cross-petition for a writ of certiorari, contesting the Court of Special Appeals' decision that Skok had a right to appeal from the denial of coram nobis relief. We granted both the petition and the cross-petition. *Skok v. State,* 354 Md. 112, 729 A.2d 404 (1999).

## II.

As it is a threshold question, we shall first consider the State's argument that "the Court of Special Appeals incorrectly held that Skok had the right to appeal from the denial of coram nobis relief." (State's brief at 3). The State contends that no appeal may be taken in a coram nobis case brought to challenge a conviction or sentence. The State relies upon a portion of the pertinent language in the Maryland Post Conviction Procedure Act, which it quotes out of context, and upon four opinions by this Court, namely *Fairbanks v. State,* 331 Md. 482, 629 A.2d 63 (1993); *Gluckstern v. Sutton,* 319 Md. 634, 574 A.2d 898, *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990); *Valentine v. State,* 305 Md. 108, 501 A.2d 847 (1985); and *Brady v. State,* 222 Md. 442, 160 A.2d 912

(1960). Neither the language of the Post Conviction Procedure Act nor the cited opinions support the State's position.

 The State asserts that the Post Conviction Procedure Act, as amended in 1965, only "allow[s] appeals in habeas or coram nobis cases brought 'other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefore [therefor],' Md.Code Ann., Art. 27, § 645A(e)...." (State's brief at 3). The entire relevant provision of the Post Conviction Procedure Act, which the State quotes in part, is as follows (Art. 27, § 645A(e), emphasis added):

> " * * * No appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained, except appeals in such cases pending in the Court of Appeals on June 1, 1958, shall be processed in due course. Provided, however, that nothing in this subtitle shall operate to bar an appeal to the Court of Special Appeals (1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code or (2) in any other proceeding in which *a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment* therefor, including confinement as a result of a proceeding under Title 4 of the Correctional Services Article."

The language of clause (2) of the second sentence, which implicitly precludes appeals in cases challenging the legality of convictions and which is relied on by the State, is expressly limited to habeas corpus cases. The second sentence of the statutory language has no application to coram nobis cases. The first sentence of the above-quoted statutory language, which includes both habeas corpus and coram nobis proceedings, relates to the use of such proceedings to challenge "the validity of incarceration under sentence of ... imprisonment...." The first sentence does not apply to one who has

fully served his or her sentence and is using coram nobis to challenge a conviction because of serious collateral consequences.

Our cases addressing the Post Conviction Procedure Act's appealability language also require the rejection of the State's interpretation. As pointed out in *Gluckstern v. Sutton, supra,* 319 Md. at 662, 574 A.2d at 912, the Post Conviction Procedure Act "was designed to create a statutory remedy for collateral challenges to criminal judgments ... and to substitute this remedy for habeas corpus and coram nobis actions challenging criminal judgments," but that, "[i]n situations where the Post Conviction Procedure Act did not provide a remedy ..., the enactment of the new statute provided no reason for restricting appeals...." *See also, e.g., Ruby v. State,* 353 Md. 100, 111, 724 A.2d 673, 678 (1999) (the Post Conviction Procedure Act "limited the right to appeal in common law habeas corpus and *coram nobis* proceeding for defendants who are in custody or on probation.... [T]he Act is not a substitute for common law remedies when, for example, the defendant *is not in custody or on probation or parole.* * * * The original common law remedies with their common law attributes continue to be viable"); *Fairbanks v. State, supra,* 331 Md. at 486, 629 A.2d at 65 ("Common law actions, including the writ of error *coram nobis,* may be available for collateral attacks on prior convictions that no longer impose restraints on a defendant. * * * *Cf. United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *U.S. v. Canales,* 960 F.2d 1311, 1316 (5th Cir.1992)"). When Skok instituted the present case, he was neither incarcerated nor on parole or probation, and thus he had no remedy under the Post Conviction Procedure Act. Consequently, the purpose of the Post Conviction Procedure Act's language restricting appeals in other proceedings is inapplicable here.

Furthermore, the cases relied on by the State provide no support for the argument that the Circuit Court's judgment was not appealable. *See Fairbanks v. State, supra; Gluckstern v. Sutton, supra; Valentine v. State, supra;* and *Brady v. State, supra.* None of the four cases was a coram

nobis action, and none of the opinions in those cases contained any language supporting the view that an appeal cannot be taken in a coram nobis case when the petitioner is neither incarcerated nor on parole or probation. In fact, as indicated above, the language of the *Fairbanks* and *Gluckstern* opinions clearly supports the appealability holding by the Court of Special Appeals in this case. The *Valentine* and *Brady* cases were both concerned with the appealability of trial court orders denying motions to correct allegedly illegal sentences, and part of the reasoning underlying their holdings of nonappealability was the availability of relief under the Post Conviction Procedure Act. *Valentine,* 305 Md. at 113–114, 120, 501 A.2d at 849–851, 853; *Brady,* 222 Md. at 446–447, 160 A.2d at 915.[5] Moreover, both *Valentine* and *Brady* have recently been expressly overruled. *State v. Kanaras,* 357 Md. 170, 184, 742 A.2d 508, 516 (1999).

Judge Cathell pointed out for this Court in *Ruby v. State, supra,* 353 Md. at 107, 111, 724 A.2d at 677, 678–679, that "[a]t common law, a proceeding on a writ of error *coram nobis* was a civil matter procedurally independent of the underlying judgment being contested," and that "a writ of error *coram nobis* remains a civil action in Maryland, independent of the underlying action from which it arose." As a coram nobis case is an independent civil action, an appeal from a final judgment in such an action is authorized by the broad language of the general appeals statute, Code (1974, 1998 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article.[6] From an early date, this Court has held that an

---

**5.** The defendant Brady did follow this Court's suggestion of bringing an action under the Post Conviction Procedure Act, and his later Post Conviction Procedure Act case became a very important one in the field of constitutional criminal procedure. *See Brady v. State,* 226 Md. 422, 174 A.2d 167 (1961), *affirmed, Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** Section 12–301 provides as follows:
" **§ 12–301. Right of appeal from final judgments—Generally.**
Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit

appeal under the general appeals statutes would lie from a final trial court judgment in a coram nobis proceeding. *Hawkins v. Bowie,* 9 G. & J. 428, 438 (1838) (a final judgment "in this proceeding in error *coram nobis*" was such "as to fall within that class of judicial acts from which an appeal will lie to this Court"). *See also Emersonian Apartments v. Taylor,* 132 Md. 209, 214–215, 103 A. 423, 424–425 (1918) (in *Hawkins v. Bowie, supra,* the coram nobis "case was finally and definitely settled against the plaintiff by the actions of the lower Court, and, of course, that could be reviewed").

Although the Post Conviction Procedure Act precludes appeals in coram nobis cases brought by an incarcerated person "challenging the validity of incarceration under sentence of . . . imprisonment," neither the Post Conviction Procedure Act nor any other statute which has been called to our attention restricts the right of appeal under the circumstances here. Accordingly, Skok's appeal was authorized by § 12–301 of the Courts and Judicial Proceedings Article, and the Court of Special Appeals correctly denied the State's motion to dismiss the appeal.

## III.

Apparently the first coram nobis case in this Court was *Hawkins v. Bowie, supra,* 9 G. & J. at 437, where the Court described the nature of a coram nobis proceedings as follows:

"A writ of error *coram nobis,* lies to correct an error in fact, in the same Court where the record is; as if there be error in the process, or through default of the clerk, it shall be reversed in the same Court, by writ of error sued thereon before the same justices. . . .

court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment."

"But of an error in law, which is the default of the justices, the same Court cannot reverse the judgment by writ of error; nor without a writ of error, but this error ought to be redressed in another Court, before other justices, by writ of error. . . .

"It is our design, in reviewing this cause, to inquire, first, whether the errors assigned fall within that class, which may, according to the rules and principles of law, be revised and corrected by writ of error *coram nobis;* namely, whether they be errors of fact, for such errors only, can warrant the same Court to reverse a judgment, because, error in fact, is not the error of the Judges. Therefore, the reversing such judgment, is not reversing their own judgment."

A more detailed description of the writ of error coram nobis was set forth by Judge Delaplaine for the Court in *Madison v. State,* 205 Md. 425, 109 A.2d 96 (1954). The Court in *Madison* also pointed out that, under modern practice, a motion to the trial court may be made instead of having the writ issued out of Chancery, and that coram nobis was not available to determine whether witnesses testified falsely. The Court in *Madison* thus explained (205 Md. at 432, 109 A.2d at 99):

"At common law the ancient writ of error *coram nobis* has been available to correct errors of fact. It has been allowed, without limitation of time, for facts affecting the validity and regularity of the judgment, and has been used in both civil and criminal cases. While the occasions for its use have been infrequent, no one has doubted its availability. It is still available in Maryland in both civil and criminal cases. In England the writ of *coram nobis* was issued out of Chancery like other writs, but the procedure by motion in the case is now the accepted American practice. The present case was not brought on a writ of *coram nobis.* However, since the courts now act on motion to rectify such mistakes of fact as were originally reviewable on *coram nobis,* it is appropriate to say that *coram nobis* will not lie (1) to correct an issue of fact which has been adjudicated, even though wrongly determined, or (2) to determine whether any witnesses testified falsely at the trial, or (3) to

present newly discovered evidence, or (4) to strike out a conviction on the ground that the prosecuting witness was mistaken in his identification of the accused as the person who committed the crime. The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment. It is manifest that if the writ were available to allow the court in which the judgment was entered to decide subsequently whether the witnesses who testified at the trial had testified falsely, and, if it should decide that they had, to strike out the judgment, then the judgment might be the beginning, rather than the end, of litigation. *Keane v. State*, 164 Md. 685, 689, 166 A. 410; *Bernard v. State*, 193 Md. 1, 65 A.2d 297."

*See also, e.g., Jackson v. State*, 218 Md. 25, 28, 145 A.2d 234, 235 (1958) (coram nobis " 'must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial' "); *Johns v. State*, 216 Md. 218, 221, 140 A.2d 56, 57 (1958); *Johnson v. State*, 215 Md. 333, 336, 138 A.2d 372, 373 (1958) ("either the writ of error *coram nobis* or proper motion is available, in both civil and criminal cases without limitation as to time, to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings"); *Hawks v. State*, 162 Md. 30, 31–32, 157 A. 900, 901 (1932); *Bridendolph v. Zellers' Executors*, 3 Md. 325, 333 (1852) ("there ought to be no doubt in Maryland, that a writ of error *coram nobis* lies to correct an error in *fact*, in the same court where the record is. If there be an error in the process, . . . it shall be reversed in the same court, by writ of error sued thereon before the same judge").

Although the scope of the issues which could be raised in a traditional coram nobis proceeding may have been narrow, it is noteworthy that one of the issues which could be raised was the voluntariness of a plea in a criminal case. As Judge

Delaplaine again stated for the Court in *Bernard v. State*, 193 Md. 1, 4, 65 A.2d 297, 298 (1949),

"the writ [of error coram nobis] will lie to set aside a judgment obtained by fraud, coercion, or duress, *or where a plea of guilty was procured by force, violence, or intimidation,* or where at the time of the trial the defendant was insane, when such facts were not known to the trial court when the judgment was entered, or where the accused was prevented by fraud, force, or fear from presenting defensive facts which could have been used at his trial, when such facts were not known to the court when the judgment was entered. The writ will not lie to correct an issue of fact which has been adjudicated even though wrongly determined; nor for alleged false testimony at the trial; nor for newly discovered evidence." (Emphasis added).

Earlier, in *Keane v. State*, 164 Md. 685, 692, 166 A. 410, 412–413 (1933), the Court, by Judge Offutt, explained (emphasis added):

"But it has been generally held that, where the writ is available, it lies to reverse a judgment obtained by fraud, coercion, or duress, *as where a plea of guilty was procured by force, violence or intimidation,* or where at the time of the trial the defendant was insane, when such facts were unknown to the court when the judgment was entered (16 *C.J.* 1326), or where the accused was prevented by fraud, force, or fear from presenting defensive facts which could have been used at his trial, when such facts were not known to the court when the judgment was entered. *Ibid.;* 30 *A.L.R.* 686. By the decided weight of authority, however, the remedy is not broad enough to reach every case in which there has been an erroneous or unjust judgment, on the sole ground that no other remedy exists, but it must be confined to cases in which the supposed error inheres in facts not actually in issue under the pleadings at the trial, and unknown to the court when the judgment was entered, but which, if known, would have prevented the judgment. Accordingly it is stated as a general rule that the writ of error *coram nobis* does not lie to correct an issue of fact

which has been adjudicated, even though wrongly determined; nor for alleged false testimony at the trial; nor on the ground that a juror swore falsely as to his qualification; nor for newly discovered evidence."

*See Sanders v. State*, 85 Ind. 318, 333 (1882) (a leading coram nobis case, cited with approval by this Court in *Keane*, 164 Md. at 692, 166 A. at 412, in which the Supreme Court of Indiana directed the trial court to vacate the judgment in a criminal case because "the plea of guilty was not the voluntary act of the accused," and directed the trial court to allow the guilty plea to be withdrawn and to order a new trial in the criminal case). *See also Campbell v. State*, 229 Ind. 198, 96 N.E.2d 876 (1951) (conviction on a guilty plea was invalidated in a coram nobis proceeding where the record of the criminal case showed that there was not an inquiry to show that the plea was voluntary, and where the state rule governing the acceptance of guilty pleas was violated).

When a trial court, in violation of Rule 4–242(c) and (d) and the constitutional principles set forth in *Boykin v. Alabama, supra*, fails to ascertain from the accused the requisite answers, information or facts permitting the court to determine that a guilty plea or nolo contendere plea is voluntary, there is an erroneous factual gap, relating to a voluntariness matter which is not adjudicated by the court on a complete factual record, and which, if the accused's answers were known, might well have prevented the acceptance of the plea. Arguably, the allegations in the present case are within the traditional "purpose of the [coram nobis] writ [which] is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment." *Madison v. State, supra*, 205 Md. at 432, 109 A.2d at 99.

We need not, however, decide whether Skok's allegations, if established, would be sufficient for relief under the older, traditional scope of the writ of error coram nobis. More recent cases and sound public policy warrant a somewhat broader scope of coram nobis.

The leading American case concerning the nature and scope of a coram nobis proceeding is *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). The respondent Morgan in 1939, in the United States District Court for the Northern District of New York, had pled guilty to a federal criminal charge and had been sentenced to a four-year prison term which he served. In 1950, Morgan was convicted in New York on a state criminal charge, and, because of the 1939 federal conviction, he received a longer sentence as a second offender than he would have otherwise received. Morgan then filed in the United States District Court for the Northern District of New York a motion for a writ of error coram nobis, challenging the 1939 conviction on the ground that his constitutional right to counsel had been violated, as he had not been furnished counsel and had not waived the right to counsel. The District Court, without a hearing, denied relief, but the United States Court of Appeals for the Second Circuit reversed and remanded for a hearing on the allegations. Upon the Government's petition for a writ of certiorari, challenging the availability of coram nobis relief under the circumstances, the Supreme Court granted the certiorari petition and affirmed the judgment of the United States Court of Appeals.

Justice Reed for the Court in *Morgan* initially reviewed the traditional nature of a coram nobis proceeding as follows (346 U.S. at 507–508, 74 S.Ct. at 250–251, 98 L.Ed. at 254–255, footnotes omitted):

"The writ of *coram nobis* was available at common law to correct errors of fact. It was allowed without limitation of time for facts that affect the 'validity and regularity' of the judgment, and was used in both civil and criminal cases. While the occasions for its use were infrequent, no one doubts its availability at common law. *Coram nobis* has had a continuous although limited use also in our states. Although the scope of the remedy at common law is often described by references to the instances specified by Tidd's Practice, see note 9, supra, its use has been by no means so limited. The House of Lords in 1844 took cognizance of an objection through the writ based on a failure properly to

swear witnesses. See the O'Connell case, [11 Cl & F 155, 8 Eng Reprint 1061,] note 11, supra. It has been used, in the United States, with and without statutory authority but always with reference to its common law scope—for example, to inquire as to the imprisonment of a slave not subject to imprisonment, insanity of a defendant, a conviction on a guilty plea through the coercion of fear of mob violence, failure to advise of right to counsel."

After pointing out that coram nobis relief was an "extraordinary remedy" and should be employed only upon "compelling" circumstances, the *Morgan* opinion addressed the traditional requirement that coram nobis relief must be based on facts unknown to the trial judge in the criminal case. The Court stated (346 U.S. at 511–512, 74 S.Ct. at 252–253, 98 L.Ed. at 256–257, footnotes omitted):

"Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice. There are suggestions in the Government's brief that the facts that justify *coram nobis* procedure must have been unknown to the judge. Since respondent's youth and lack of counsel were so known, it is argued, the remedy of *coram nobis* is unavailable. One finds similar statements as to the knowledge of the judge occasionally in the literature and cases of *coram nobis*. Such an attitude may reflect the rule that deliberate failure to use a known remedy at the time of trial may be a bar to subsequent reliance on the defaulted right. The trial record apparently shows Morgan was without counsel. . . . He alleges he was nineteen, without knowledge of law and not advised as to his rights. The record is barren of the reasons that brought about a trial without legal representation for the accused. As the plea was 'guilty' no details of the hearing appear. . . . In this state of the record we cannot know the facts and thus we must rely on respondent's allegations."

The *Morgan* opinion concluded by holding that coram nobis should be available to raise " 'fundamental' " errors in at-

tempting to show that a criminal conviction was invalid under circumstances where no other remedy is presently available and where there were sound reasons for the failure to seek relief earlier. The Court said (346 U.S. at 512–513, 74 S.Ct. at 253, 98 L.Ed. at 257, footnotes omitted):

"In the *Mayer* case [*United States v. Mayer*, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914) ] this Court said that *coram nobis* included errors 'of the most fundamental character.' Under the rule of *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461, decided prior to respondent's conviction, a federal trial without competent and intelligent waiver of counsel bars a conviction of the accused. Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of *coram nobis* must be heard by the federal trial court. Otherwise a wrong may stand uncorrected which the available remedy would right. Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise. * * *

"Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid."

The *Morgan* holding as to the scope of coram nobis proceedings was not based on federal constitutional requirements applicable to the states; instead, it involved a matter of federal criminal procedure. Consequently, the *Morgan* holding was not binding upon state courts. Nevertheless, to the extent that appellate courts in other states have considered *Morgan*, they have generally followed it. For example, as stated by the Supreme Court of Pennsylvania in *Commonwealth v. Sheehan*, 446 Pa. 35, 40, 285 A.2d 465, 468 (1971),

"the Court in *Morgan* noted that coram nobis as applied in American jurisdictions had not been confined strictly to matters of fact. The Court's conclusion commends itself to us as an appropriate and salutary application of this ancient writ in the contemporary setting . . . ."

*See also, e.g., State v. Urbano,* 105 Ariz. 13, 457 P.2d 343 (1969) (a challenge to the voluntariness of a guilty plea can be raised in a coram nobis proceeding by one whose period of suspension of sentence has passed, citing *Morgan,* but the court upheld the denial of relief on the ground that involuntariness was not shown); *Larimore v. State,* 327 Ark. 271, 279–282, 938 S.W.2d 818, 822–823 (1997) (the court, relying upon *Morgan,* held that coram nobis was available to challenge a conviction on the ground that the prosecution withheld exculpatory evidence); *State v. Ledezma,* 1989 WL 64151 (Del.Super.1989) (relying upon *Morgan,* the court in a coram nobis proceeding invalidated a criminal conviction on the ground that the trial judge in the criminal case had accepted the guilty plea without complying with criminal rules similar to Maryland Rule 4–242); *Tolar v. State,* 196 So.2d 1, 5–6 (Fla.App.1967) (the *Morgan* holding is "applicable to our courts" and permits, *inter alia,* a challenge to the voluntariness of a guilty plea); *Wong v. Among,* 52 Haw. 420, 425–426, 477 P.2d 630, 634 (1970) (the court held, citing *Morgan,* that coram nobis is available to challenge convictions on the ground, *inter alia,* that guilty pleas were not voluntary); *Pike v. State,* 152 Me. 78, 82–83, 123 A.2d 774, 776 (1956) (the court, quoting *Morgan,* took the position that coram nobis is available to challenge a conviction on the ground that the accused's right to counsel was violated, but the court also held that there was no violation of the right to counsel); *Powell v. State,* 495 S.W.2d 633, 635–636 (Mo.1973) (coram nobis is available to attack a conviction on the ground that the accused was denied the right to counsel, but, in this case, the allegations were insufficient and, alternatively, the petitioner was not suffering collateral consequences as required by *Morgan* ); *State v. Eaton,* 280 S.W.2d 63, 65–66 (Mo.1955) (denial of a motion in the nature of a writ of error coram nobis was reversed by the

state Supreme Court, relying on *Morgan*, where the movant challenged a criminal conviction on the ground that the prosecution knowingly used perjured testimony); *Chauncey v. Warden*, 88 Nev. 500, 501, 501 P.2d 1039, 1040 (1972) (in holding that a conviction may later be collaterally challenged based on the alleged involuntariness of a guilty plea, the state Supreme Court, quoting *Morgan*, pointed out that "[i]t is settled that a conviction in which the sentence has been served may be later challenged when the effects of that conviction remain"); *State v. Janiec*, 52 N.J.Super. 1, 17–19, 144 A.2d 561, 569–571 (1958) (adopting the principles of *Morgan*, the court held that a person who has served his or her sentence may collaterally challenge the conviction on constitutional grounds by filing a motion which "should have the attributes and incidents of the writ of *coram nobis* "); *In the Matter of the Petition of Brockmueller*, 374 N.W.2d 135, 138 (S.D.1985) ("The state further argues that coram nobis is inapplicable in this case as the writ is available to redress only errors of fact and not of law. We hold, however, that coram nobis encompasses legal errors of constitutional significance," citing several federal cases).

Consequently, as a result of *United States v. Morgan*, in both federal and state courts, the scope of a coram nobis proceeding has been broadened. As set forth by Professor Wright (3 Wright, *Federal Practice and Procedure Criminal 2d*, § 592, at 429–432 (1982), footnotes omitted),

"[t]he present-day scope of coram nobis is broad enough to encompass not only errors of fact that affect the validity or regularity of legal proceedings, but also legal errors of a constitutional or fundamental proportion. The conviction is presumed to have been the result of proper proceedings, and the burden is on the defendant to show otherwise. In *Morgan* the Court said broadly that 'in behalf of the unfortunates, federal courts should act in doing justice if the record makes plain a right to relief,' but it also said that courts should use 'this extraordinary remedy only under circumstances compelling such action to achieve justice.'

"The *Morgan* case has encouraged lower courts to allow challenges of a conviction by coram nobis on behalf of a defendant who has not yet commenced serving his sentence or has completed service of it. The Supreme Court has expressly recognized, in a different but not dissimilar context, 'the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences.' Coram nobis is available to challenge a conviction in order to remove these consequences."

This Court has not previously in a coram nobis case considered *United States v. Morgan* and its progeny in state and federal courts.[7] Nevertheless, we have cited *Morgan* as supporting authority in two cases which were not coram nobis proceedings. Thus, in *Adkins v. State*, 324 Md. 641, 598 A.2d 194 (1991), we held that an appeal from an order revoking a defendant's probation and reimposing a previously suspended sentence was not rendered moot by the defendant's having completely served his sentence during the pendency of the appeal. The reason for our holding in *Adkins* was that the violation of probation finding would have collateral legal consequences, and, in support of this reasoning, we extensively relied upon *Morgan* and similar federal cases. *Adkins*, 324 Md. at 652–654, 598 A.2d at 200–202. In *Fairbanks v. State, supra*, 331 Md. at 486, 629 A.2d at 65, holding that a criminal defendant at a recidivist sentencing hearing was not entitled to collaterally attack a previous conviction, we pointed out that other remedies including coram nobis were available, and we cited, *inter alia*, the *Morgan* case. *See also Ruby v. State, supra*, 353 Md. at 110–111, 724 A.2d at 678 (discussing *Morgan* in connection with holding that a coram nobis proceeding is a separate civil action and not part of the underlying criminal case).

---

7. There were two coram nobis cases in this Court after the *Morgan* opinion. They were *Jackson v. State*, 218 Md. 25, 145 A.2d 234 (1958), and *Johns v. State*, 216 Md. 218, 140 A.2d 56 (1958). This Court's opinions in those cases neither considered nor even cited *Morgan*. An examination of the briefs in those cases discloses that *Morgan* was not cited by the parties in either case.

Along with the vast majority of appellate courts which have considered the matter, we believe that the scope of coram nobis, as delineated in *United States v. Morgan,* is justified by contemporary conditions and public policy. Very often in a criminal case, because of a relatively light sanction imposed or for some other reason, a defendant is willing to forego an appeal even if errors of a constitutional or fundamental nature may have occurred.[8] Then, when the defendant later learns of a substantial collateral consequence of the conviction, it may be too late to appeal, and, if the defendant is not incarcerated or on parole or probation, he or she will not be able to challenge the conviction by a petition for a writ of habeas corpus or a petition under the Post Conviction Procedure Act.

Moreover, serious collateral consequences of criminal convictions have become much more frequent in recent years. The past few decades have seen a proliferation of recidivist statutes throughout the country. In addition, apparently because of recent changes in federal immigration laws, regulations, and administration, there has been a plethora of deportation proceedings against non-citizens based on relatively minor criminal convictions. Because of this, Maryland Rule 4–242 was recently amended by adding the following provision:

"(e) **Collateral Consequences of a Plea of Guilty or Nolo Contendere.** Before the court accepts a plea of guilty or nolo contendere, the court, the State's Attorney, the attorney for the defendant, or any combination thereof shall advise the defendant (1) that by entering the plea, if the defendant is not a United States citizen, the defendant may face additional consequences of deportation, detention, or

---

8. In recent years, appeals have been taken in a relatively small percentage of circuit court criminal cases. For example, during fiscal year 1999 (July 1, 1998 to June 30, 1999), 70,774 criminal cases plus 40,309 juvenile cases (of which 30, 276 were delinquency cases) were terminated in the circuit courts. *The Annual Report of the Maryland Judiciary 1998–1999,* at 46, 59 (December 1, 1999). During the same one year period, the Court of Special Appeals disposed of 661 criminal cases and 35 juvenile cases. *Id.* at 25.

ineligibility for citizenship and (2) that the defendant should consult with defense counsel if the defendant is represented and needs additional information concerning the potential consequences of the plea. The omission of advice concerning the collateral consequences of a plea does not itself mandate that the plea be declared invalid."

In light of these serious collateral consequences, there should be a remedy for a convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or fundamental grounds. Such person should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.

This expanded scope of coram nobis to challenge criminal convictions is, however, subject to several important qualifications which are set forth in *United States v. Morgan* and the cases applying *Morgan*. Thus, the grounds for challenging the criminal conviction must be of a constitutional, jurisdictional or fundamental character. *United States v. Morgan*, 346 U.S. at 512, 74 S.Ct. at 253, 98 L.Ed. at 257. *See, e.g., U.S. v. Mandel*, 672 F.Supp. 864, 867 (D.Md.1987), *aff'd*, 862 F.2d 1067 (4th Cir.1988), *cert. denied*, 491 U.S. 906, 109 S.Ct. 3190, 105 L.Ed.2d 699 (1989); *Larimore v. State, supra*, 327 Ark. at 279–280, 938 S.W.2d at 822; *State v. Scales*, 593 N.E.2d 181, 184 (Ind.1992); *In the Matter of the Petition of Brockmueller, supra*, 374 N.W.2d at 137.

In addition, a presumption of regularity attaches to the criminal case, and the burden of proof is on the coram nobis petitioner. *Morgan*, 346 U.S. at 512, 74 S.Ct. at 253, 98 L.Ed. at 257 ("It is presumed the [criminal] proceedings were correct and the burden rests on the accused to show otherwise"); *Larimore v. State, supra*, 327 Ark. at 279, 938 S.W.2d at 822; *State v. Scales, supra*, 593 N.E.2d at 184; *Dwyer v. State*, 151 Me. 382, 395–396, 120 A.2d 276, 284 (1956).

■ Furthermore, the coram nobis petitioner must be suffering or facing significant collateral consequences from the conviction. *See, e.g., United States v. National Plastikwear Fashions, Inc.,* 368 F.2d 845, 846 (1966), *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967) (petitioner's "allegations failed to show any outstanding adverse legal consequences from his conviction and one-month sentence ..., imposed and served nearly twelve years ago, which were necessary ... to vacate the judgment of conviction even under the liberal scope of *coram nobis* "); *State v. Scales, supra,* 593 N.E.2d at 184; *Powell v. State, supra,* 495 S.W.2d at 635–636; *In the Matter of the Petition of Brockmueller, supra,* 374 N.W.2d at 137.

■ Basic principles of waiver are applicable to issues raised in coram nobis proceedings. *United States v. Morgan,* 346 U.S. at 512, 74 S.Ct. at 253, 98 L.Ed. at 257. Similarly, where an issue has been finally litigated in a prior proceeding, and there are no intervening changes in the applicable law or controlling case law, the issue may not be relitigated in a coram nobis action. *See Commonwealth v. Ditmore,* 242 Pa.Super. 248, 253–254, 363 A.2d 1253, 1256 (1976). *See also U.S. v. Mandel, supra,* 672 F.Supp. at 867, 871–873. Therefore, the same body of law concerning waiver and final litigation of an issue, which is applicable under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A (b) through (d), shall be applicable to a coram nobis proceeding challenging a criminal conviction. *See, e.g., State v. Rose,* 345 Md. 238, 243–250, 691 A.2d 1314, 1316–1320 (1997); *Hunt v. State,* 345 Md. 122, 132–139, 691 A.2d 1255, 1259–1263, *cert. denied,* 521 U.S. 1131, 117 S.Ct. 2536, 138 L.Ed.2d 1036 (1997); *State v. Hernandez,* 344 Md. 721, 690 A.2d 526 (1997); *Walker v. State,* 343 Md. 629, 640–650, 684 A.2d 429, 434–439 (1996); *Oken v. State,* 343 Md. 256, 269–273, 681 A.2d 30, 36–38 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997); *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978).

80

Finally, one is not entitled to challenge a criminal conviction by a coram nobis proceeding if another statutory or common law remedy is then available. *See, e.g., United States v. Morgan,* 346 U.S. at 512, 74 S.Ct. at 253, 98 L.Ed. at 257 ("no other remedy being then available . . ., this motion in the nature of the extraordinary writ of coram nobis must be heard by the . . . trial court"); *U.S. v. Mandel, supra,* 862 F.2d at 1075; *In the Matter of the Petition of Brockmueller, supra,* 374 N.W.2d at 137 ("statutory remedies must be unavailable or inadequate before a petition for coram nobis relief can be granted"). If one is incarcerated as a result of the challenged conviction or is on parole or probation, he or she will likely have a remedy under the Post Conviction Procedure Act or habeas corpus. Someone in this position, therefore, shall not be entitled to coram nobis relief.

Although the Maryland General Assembly in 1995 limited a person to "one petition, arising out of each trial, for relief" under the Post Conviction Procedure Act, the Legislature did provide that a "court may in its discretion reopen a postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice." Art. 27, § 645A(a)(2). *See Grayson v. State,* 354 Md. 1, 728 A.2d 1280 (1999). In our view, the statutory right of one who is incarcerated or on parole or probation to request a reopening of a post conviction proceeding to challenge a particular conviction, is a statutory remedy which will preclude a challenge to that conviction by coram nobis. Accordingly, the expanded coram nobis remedy to challenge a criminal conviction, which we today recognize, will ordinarily be available only to a person who, based on the conviction, is not incarcerated and is not on parole or probation.

Applying the above-described criteria to the present case requires a remand to the Circuit Court for a hearing on Skok's allegations.

As previously indicated, the courts have consistently held that the scope of a coram nobis proceeding encompasses issues concerning the voluntariness of a guilty or nolo contendere plea, and whether the record shows that such plea was

understandingly and voluntarily made under the principles of *Boykin v. Alabama, supra,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. *See, e.g., Navarro v. United States,* 449 F.2d 113, 114 (9th Cir.1971) (where a guilty plea was not knowingly made, relief is available in a coram nobis proceeding); *United States v. Strother,* 434 F.2d 1292, 1293 (5th Cir.1970) (where guilty pleas allegedly were "not tendered with an understanding of the nature of the charge" and "not entered with an understanding of the consequences of the plea," petitioner was entitled to a hearing in a coram nobis case); *Holloway v. United States,* 393 F.2d 731, 732–733 (9th Cir.1968) (coram nobis petitioner was "certainly entitled to a hearing to determine whether or not his prior conviction was based upon an involuntary guilty plea"); *McNalley v. State,* 468 So.2d 209, 211 (Ala.Cr.App.1985) (a guilty plea was accepted in violation of the requirements of *Boykin v. Alabama,* and the accused was entitled to relief in a coram nobis action); *Tolar v. State, supra,* 196 So.2d at 5–7 (allegations in a coram nobis case, that the guilty plea in a criminal case was involuntary, were held to be sufficient to entitle the petitioner to a hearing); *Wong v. Among, supra,* 52 Haw. at 425–426, 477 P.2d at 634 (the coram nobis court was ordered to vacate criminal convictions because the record failed to show that the guilty pleas were voluntary and understandably entered); *Wood v. State,* 354 So.2d 1122, 1123 (Miss.1978); *Chauncey v. Warden, supra,* 88 Nev. at 501–502, 501 P.2d at 1040; *United States v. Liska,* 409 F.Supp. 1405, 1406–1407 (E.D.Wis.1976).

Moreover, the courts have regularly held that violations of rules similar to Maryland Rule 4–242, which are designed to insure that guilty and nolo contendere pleas are voluntary, constitute a basis for coram nobis relief. *See, e.g., Shelton v. United States,* 242 F.2d 101, 112–113 (5th Cir.1957), *set aside by court sitting en banc,* 246 F.2d 571 (5th Cir.1957), *en banc decision reversed and original judgment remanding to trial court upheld,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958); *State v. Ledezma, supra; Thacker v. State,* 254 Ind. 665, 669–670, 262 N.E.2d 189, 191–192 (1970); *Campbell v. State, supra,* 229 Ind. 198, 96 N.E.2d 876; *United States v. Tyler,* 413 F.Supp. 1403, 1405–1406 (M.D.Fla.1976).

The issues concerning Skok's pleas have not previously been litigated, and Skok is clearly facing substantial collateral consequences from his two convictions. Skok, not being incarcerated or on parole or probation as a result of the convictions, presently has no other common law or statutory remedy. Under the circumstances, Skok was entitled to a hearing under his motion for coram nobis relief.[9]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

---

9. In light of our holding with regard to coram nobis, we do not reach Skok's alternative argument that he is entitled to relief under Rule 4–331(b) based on "mistake, or irregularity." We note, however, that Rule 4–331 is not a common law or statutory remedy, and thus the possibility of relief under the rule would not preclude coram nobis relief. *Cf. State v. Kanaras*, 357 Md. 170, 183–184, 742 A.2d 508, 515–516 (1999).